SPECIAL

138

## COVERLETTER TO SPECIAL CLERK AND MASTER

The Honorable Clerk and Master

district court of the united states, eastern district of michigan

detroit, michigan

united states of america

Greetings clerk and master,

I require the following special exhibits, included herewith, be filed into *speciali causa* (special cause) **2:21-cv-11888-SJM-APP**, as relating to evidence and documents of a private proprietary and confidential nature.

## Table of Exhibits

**Exhibit A: Denial of Assumptions and Presumptions**

**Exhibit B: Declaration of Intentions**

**Exhibit C: Credible Witness Statement (nesbitt, david darnell)**

**Exhibit D: Credible Witness Statement (watkins, reginald)**

**Exhibit E: Credible Witness Statement (johnson-*El,* andre lemaurio)**

**Exhibit F: Credible Witness Statement (mario amir *El*)**

**Exhibit G: Table of Authorities**

**Exhibit H: Sean Houston *El* Foundation Trust-Certificate of Trust**

**Exhibit I:  Notice of Declaration of Trust**

**Exhibit J: *1781 Articles of Confederation***

**Exhibit K: *Treaty of 1787 Marrakesh***

**Exhibit L: *1789 Constitution for the United States of America***

**Exhibit M: *Treaty of 1796 Tripoli***

**Exhibit N: *Treaty of 1880 Madrid***

**Exhibit O: Notice of Name Acknowledgement and Acceptance**

**Exhibit P:  Disclaimer of Trusteeship**

POOR QUALITY ORIGINALS

Exhibit Q: Explanatory Statement

Exhibit R: Notice of Priority Interest

Exhibit S: Proof of Consideration

Exhibit T: 1939 Foreign Relations

Exhibit U: U.S. CONGRESSIONAL SERIAL SET Doc No. 326 pages 459-460

Exhibit V: COPIUS NOTES of the Supreme Court of the United States on Treaties


By: *houston, lasean dejong*

houston, lasean dejong, Moor grantee suitor
c/o 3079 s baldwin road
lake orion, michigan rfd
shouston48342@yahoo.com

(seal)

# Exhibit J
# 2:21 cv-11888-SJM-APP

*Special*

## AFFIDAVIT OF ACCEPTANCE and ACKNOWLEDGEMENT

**I DECLARE** that the collection of the Archivist of the United States contains a publication entitled the *1781 Articles of Confederation*, and that the attached reproduction, under the seal of the National Archives of the United States, is a true and correct copy of the documents(s) in its' possession that work, now in the possession of _houston, lasean dejong, *Moor grantee/beneficiary*, RECOVEYED, and GRANTED, on special deposit to the SEAN HOUSTON-*EL* FOUNDATION TRUST as trust res for the benefit of its beneficiaries.

**Further Affiant Sayeth Naught**

Performed in proper person, in his own right, who has attained the Age of Majority with *manifest special intent and purpose,* freewill act and Deed:

**I DECLARE,** under penalty of perjury under the laws of the michigan and the united states of america that the foregoing is true and correct.  Executed: _____ *4ª September*, 20 *2¹* .

By: _____ *houston, lasean Dejong* _____
**houston, lasean dejong**, *grantee/grantor/heir/beneficiary*
a private Moor americas aboriginal illinoisan national,
*"but not citizen of the united states for the district of columbia,
nor citizen of the united states of america in congress assembled."*
**SPECIAL DEPOSIT, PRIVATE, PRIORITY**

*locus sigilli* (seal)

I am over the age of 18 and not party to the transaction regarding the papers mailed.

*nesbitt, cawil darnell*
**Print**

*nesbitt, drv dorenll*
**Witness**

*lawson, tryone batson Jr*
**Print**

*law, tyr botr. j.*
**Witness**

*locus sigilli* (seal)                         *locus sigilli* (seal)

*RF 125594909US.702 Trust*



# State of Michigan



## DEPARTMENT OF STATE
## COUNTY CLERK CERTIFICATION

*I, Jocelyn Benson, Secretary of State of the State of Michigan and custodian of the Great Seal of the State, hereby certify that Fred Miller, whose attestation is affixed to the annexed instrument, was on the date thereof the duly elected or appointed and qualified Macomb County Clerk and the Clerk of the Circuit Court, and all official acts as such should be given full faith and credit in all Courts of Justice and elsewhere.*

*IN TESTIMONY WHEREOF, I have hereto affixed my signature and Great Seal of the State, at Lansing, this 23rd day of December in the year of our Lord two thousand and nineteen.*



Jocelyn Benson

*Secretary of State*

246468-3-634616-181

M. Petruzzelli ........ of the County of Macomb and also Clerk of the Circuit Court for said County, HEREBY CERTIFY that

*1781 Articles of Confederation*                                    Page 2 of 18

# NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

## To all to whom these presents shall come. Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf, under the seal of the National Archives of the United States, that the attached reproduction(s) is a true and correct copy of documents in his custody.



TREVOR K. PLANTE

CHIEF, ARCHIVES 1 REFERENCE SERVICES BRANCH

National Archives and Records Administration
700 Pennsylvania Avenue, NW
Washington, DC 20408

NA FORM 13007 (10-86)

STATE OF MICHIGAN

COUNTY OF OAKLAND

I certify that this is a true and correct copy of an ARTICLES OF CONFEDERATION, in the possession of ____ HOUSTON, EASE OF KING_ Dated _Febrary 14_ 20 19 .

In testimony whereof, I have hereunto set my hand and seal at Pontiac, Oakland County, Michigan this 14th day of February 2019.

NOTARY

(seal)





...in just proportion to ... ...ply by the States while first made the appointment.

**Article VIII.** All charges of war, and all other expences that shall be incurred for the common defence or general welfare, and allowed by the united states in congress assembled, shall be defrayed out of a common treasury, which shall be supplied by the several states, in proportion to the value of all land within each state, granted to or surveyed for any Person, as such land and the buildings and improvements thereon shall be estimated according to such mode as the united states in congress assembled, shall from time to time direct and appoint. The taxes for paying that proportion shall be laid and levied by the authority and direction of the legislatures of the several states within the time agreed upon by the united states in congress assembled.

**Article IX.** The united states in congress assembled, shall have the sole and exclusive right and power of determining on peace and war, except in the cases mentioned in the sixth article — of sending and receiving ambassadors — entering into treaties and alliances, provided that no treaty of commerce shall be made whereby the legislative power of the respective states shall be restrained from imposing such imposts and duties on foreigners, as their own people are subjected to, or from prohibiting the exportation or importation of any species of goods or commodities whatsoever — of establishing rules for deciding in all cases, what captures on land or water shall be legal, and in what manner prizes taken by land or naval forces in the service of the united states shall be divided or appropriated — of granting letters of marque and reprisal in times of peace — appointing courts for the trial of piracies and felonies committed on the high seas and establishing courts for receiving and determining finally appeals in all cases of captures, provided that no member of congress shall be appointed a judge of any of the said courts.

The united states in congress assembled shall also be the last resort on appeal in all disputes and differences now subsisting or that hereafter may arise between two or more states concerning boundary, jurisdiction or any other cause whatever; which authority shall always be exercised in the manner following. Whenever the legislative or executive authority or lawful agent of any state in controversy with another shall present a petition to congress stating the matter in question and praying for a hearing, notice thereof shall be given by order of congress to the legislative or executive authority of the other state in controversy, and a day assigned for the appearance of the parties by their lawful agents, who shall then be directed to appoint by joint consent, commissioners or judges to constitute a court for hearing and determining the matter in question: but if they cannot agree, congress shall name three persons out of each of the united states, and from the list of such persons each party shall alternately





united states, and from the list of such persons each party shall alternately strike out one, the petitioners beginning, until the number shall be reduced to thirteen; and from that number not less than seven, nor more than nine names as congress shall direct, shall in the presence of congress be drawn out by lot, and the persons whose names shall be so drawn, or any five of them, shall be commissioners or judges, to hear and finally determine the controversy, so always as a major part of the judges who shall hear the cause shall agree in the determination: and if either party shall neglect to attend at the day appointed, without showing reasons, which congress shall judge sufficient, or being present shall refuse to strike, the congress shall proceed to nominate three persons out of each state, and the secretary of congress shall strike in behalf of such party absent or refusing; and the judgment and sentence of the court to be appointed, in the manner before prescribed, shall be final and conclusive; and if any of the parties shall refuse to submit to the authority of such court, or to appear or defend their claim or cause, the court shall nevertheless proceed to pronounce sentence, or judgment, which shall in like manner be final and decisive, the judgment or sentence and other proceedings being in either case transmitted to congress, and lodged among the acts of congress for the security of the parties concerned: provided that every commissioner, before he sits in judgment, shall take an oath to be administered by one of the judges of the supreme or superior court of the state, where the cause shall be tried, well and truly to hear and determine the matter in question, according to the best of his judgment, without favour, affection or hope of reward: provided also that no state shall be deprived of territory for the benefit of the united states.

All controversies concerning the private right of soil claimed under different grants of two or more states, whose jurisdictions as they may respect such lands, and the states which passed such grants are adjusted, the said grants or either of them being at the same time claimed to have originated antecedent to such settlement of jurisdiction, shall on the petition of either party to the congress of the united states, be finally determined as near as may be in the same manner as is before prescribed for deciding disputes respecting territorial jurisdiction between different states.

The united states in congress assembled, shall also have the sole and exclusive right and power of regulating the alloy and value of coin struck by their own authority, or by that of the respective states — fixing the standard of weights and measures throughout the united states — regulating the trade and managing all affairs with the Indians, not members of any of the states, provided that the legislative right of any state within its own limits be not infringed or violated — establishing and regulating post-offices from one state to another throughout all the united states, and exacting such postage on the





... nor enter into any treaties or alliances, nor coin money, nor regulate the value thereof, nor ascertain the sums and expences necessary for the defence and welfare of the United States, or any of them, nor emit bills, nor borrow money on the credit of the United States, nor appropriate money, nor agree upon the number of vessels of war, to be built or purchased, or the number of land or sea forces to be raised, nor appoint a commander in chief of the army or navy, unless nine states assent to the same: nor shall a question on any other point, except for adjourning from day to day be determined, unless by the votes of a majority of the United States in congress assembled.

The congress of the United States shall have power to adjourn to any time within the year, and to any place within the United States, so that no period of adjournment be for a longer duration than the space of six months, and shall publish the Journal of their proceedings monthly, except such parts thereof relating to treaties, alliances or military operations, as in their judgment require secrecy; and the yeas and nays of the delegates of each state on any question shall be entered on the Journal, when it is desired by any delegate; and the delegates of a state, or any of them, at his or their request shall be furnished with a transcript of the said Journal, except such parts as are above excepted, to lay before the legislatures of the several states.

Article X. The committee of the states, or any nine of them, shall be authorised to execute, in the recess of congress, such of the powers of congress as the United States in congress assembled, by the consent of nine states, shall from time to time think expedient to vest them with; provided that no power be delegated to the said committee, for the exercise of which, by the articles of confederation, the voice of nine states in the congress of the United States assembled is requisite.

Article XI. Canada acceding to this confederation, and joining in the measures of the United States, shall be admitted into, and entitled to all the advantages of this union: but no other colony shall be admitted into the same, unless such admission be agreed to by nine states.

Article XII. All bills of credit emitted, monies borrowed and debts contracted by, or under the authority of congress, before the assembling of the United States, in pursuance of the present confederation, shall be deemed and considered as a charge against the United States, for payment and satisfaction whereof the said United States, and the public faith are hereby solemnly pledged.

Article XIII. Every state shall abide by the determinations of the United States in congress assembled, on all questions which by this confederation are submitted to them. And the Articles of this confederation shall be inviolably observed by every state, and the union shall be perpetual; nor shall any alteration at any time hereafter be made in any of them; unless such





# Articles of Confederation and perpetual Union: March 1, 1781

To all to whom these Presents shall come, we the undersigned Delegates of the States affixed to our Names send greeting.

Articles of Confederation and perpetual Union between the states of New Hampshire, Massachusetts-bay Rhode Island and Providence Plantations, Connecticut, New York, New Jersey, Pennsylvania, Delaware, Maryland, Virginia, North Carolina, South Carolina and Georgia.

**I.**

The Stile of this Confederacy shall be

**"The United States of**

**America". II.**

Each state retains its sovereignty, freedom, and independence, and every power, jurisdiction, and right, which is not by this Confederation expressly delegated to the United States, in Congress assembled.

**III.**

The said States hereby severally enter into a firm league of friendship with each other, for their common defense, the security of their liberties, and their mutual and general welfare, binding themselves to assist each other, against all force offered to, or attacks made upon them, or any of them, on account of religion, sovereignty, trade, or any other pretense whatever.

**IV.**

The better to secure and perpetuate mutual friendship and intercourse among the people of the different States in this Union, the free inhabitants of each of these States, paupers, vagabonds, and fugitives from justice excepted, shall be entitled to all privileges and immunities of free citizens in the several States; and the people of each State shall free ingress and regress to and from any other State, and shall enjoy therein all the privileges of trade and commerce, subject to the same duties, impositions, and restrictions as the inhabitants thereof respectively, provided that such restrictions shall not extend so far as to prevent the removal of property imported into any State, to any other State, of which the owner is an inhabitant; provided also that no imposition, duties or restriction shall be laid by any State, on the property of the United States, or either of them.

If any person guilty of, or charged with, treason, felony, or other high misdemeanor in any State, shall flee from justice, and be found in any of the United States, he shall, upon demand of

the Governor or executive power of the State from which he fled, be delivered up and removed to the State having jurisdiction of his offense.

Full faith and credit shall be given in each of these States to the records, acts, and judicial proceedings of the courts and magistrates of every other State.

## V.

For the most convenient management of the general interests of the United States, delegates shall be annually appointed in such manner as the legislatures of each State shall direct, to meet in Congress on the first Monday in November, in every year, with a powerreserved to each State to recall its delegates, or any of them, at any time within the year, and to send others in their stead for the remainder of the year.

No State shall be represented in Congress by less than two, nor more than seven members; and no person shall be capable of being a delegate for more than three years in any term of six years; nor shall any person, being a delegate, be capable of holding any office under the United States, for which he, or another for his benefit, receives any salary, fees or emolument of any kind.

Each State shall maintain its own delegates in a meeting of the States, and while they act as members of the committee of the States.

In determining questions in the United States in Congress assembled, each State shall

have one vote. Freedom of speech and debate in Congress shall not be impeached or

questioned in any court or place out of
Congress, and the members of Congress shall be protected in their persons from arrests or imprisonments, during the
time of their going to and from, and attendence on Congress, except for treason, felony, or breach of the peace.

## VI.

No State, without the consent of the United States in Congress assembled, shall send any embassy to, or receive any embassy from, or enter into any conference, agreement, alliance or treaty with any King, Prince or State; nor shall any person holding any office of profit or trust under the United States, or any of them, accept any present, emolument, office or title of any kind whatever from any King, Prince or foreign State; nor shall the United States in Congress assembled, or any of them, grant any title of nobility.

No two or more States shall enter into any treaty, confederation or alliance whatever between them, without the consent of the United States in Congress assembled, specifying accurately the purposes for which the same is to be entered into, and how long it shall continue.

No State shall lay any imposts or duties, which may interfere with any stipulations in treaties, entered into by the United States in Congress assembled, with any King, Prince or State, in pursuance of any treaties already proposed by Congress, to the courts of France and Spain.

No vessel of war shall be kept up in time of peace by any State, except such number only, as shall be deemed necessary by the United States in Congress assembled, for the defense of such State, or its trade; nor shall any body of forces be kept up by any State in time of peace, except such number only, as in the judgement of the United States in Congress assembled, shall be deemed requisite to garrison the forts necessary for the defense of such State; but every State shall always keep up a well-regulated and disciplined militia, sufficiently armed and accoutered, and shall provide and constantly have ready for use, in public stores, a due number of filed pieces and tents, and a proper quantity of arms, ammunition and camp equipage.

No State shall engage in any war without the consent of the United States in Congress assembled, unless such State be actually invaded by enemies, or shall have received certain advice of a resolution being formed by some nation of Indians to invade such State, and the danger is so imminent as not to admit of a delay till the United States in Congress assembled can be consulted; nor shall any State grant commissions to any ships or vessels of war, nor letters of marque or reprisal, except it be after a declaration of war by the United States in Congress assembled, and then only against the Kingdom or State and the subjects thereof, against which war has been so declared, and under such regulations as shall be established by the United States in Congress assembled, unless such State be infested by pirates, in which case vessels of war may be fitted out for that occasion, and kept so long as the danger shall continue, or until the United States in Congress assembled shall determine otherwise.

## VII.

When land forces are raised by any State for the common defense, all officers of or under the rank of colonel, shall be appointed by the legislature of each State respectively, by whom such forces shall be raised, or in such manner as such State shall direct, and all vacancies shall be filled up by the State which first made the appointment.

## VIII.

All charges of war, and all other expenses that shall be incurred for the common defense or general welfare, and allowed by the United States in Congress assembled, shall be defrayed out of a common treasury, which shall be supplied by the several States in proportion to the value of all land within each State, granted or surveyed for any person, as such land and the buildings and improvements thereon shall be estimated according to such mode as the United States in Congress assembled, shall from time to time direct and appoint.

The taxes for paying that proportion shall be laid and levied by the authority and direction of the legislatures of the several States within the time agreed upon by the United States in

Congress assembled.

## IX.

The United States in Congress assembled, shall have the sole and exclusive right and power of determining on peace and war, except in the cases mentioned in the sixth article -- of sending and receiving ambassadors -- entering into treaties and alliances, provided that no treaty of commerce shall be made whereby the legislative power of the respective States shall be restrained from imposing such imposts and duties on foreigners, as their own people are subjected to, or from prohibiting the exportation or importation of any species of goods or commodities whatsoever
-- of establishing rules for deciding in all cases, what captures on land or water shall be legal, and in what manner prizes taken by land or naval forces in the service of the United States shall be divided or appropriated -- of granting letters of marque and reprisal in times of peace -- appointing courts for the trial of piracies and felonies commited on the high seas and establishing courts for receiving and determining finally appeals in all cases of captures, provided that no member of Congress shall be appointed a judge of any of the said courts.

The United States in Congress assembled shall also be the last resort on appeal in all disputes and differences now subsisting or that hereafter may arise between two or more States concerning boundary, jurisdiction or any other causes whatever; which authority shall always be exercised in the manner following. Whenever the legislative or executive authority or lawful agent of any State in controversy with another shall present a petition to Congress stating the matter in question and praying for a hearing, notice thereof shall be given by order of Congress to the legislative or executive authority of the other State in controversy, and a day assigned for the appearance of the parties by their lawful agents, who shall then be directed to appoint by joint consent, commissioners or judges to constitute a court for hearing and determining the matter in question: but if they cannot agree, Congress shall name three persons out of each of the United States, and from the list of such persons each party shall alternately strike out one, the petitioners beginning, until the number shall be reduced to thirteen; and from that number not less than seven, nor more than nine names as Congress shall direct, shall in the presence of Congress be drawn out by lot, and the persons whose names shall be so drawn or any five of them, shall be commissioners or judges, to hear and finally determine the controversy, so always as a major part of the judges who shall hear the cause shall agree in the determination: and if either party shall neglect to attend at the day appointed, without showing reasons, which Congress shall judge sufficient, or being present shall refuse to strike, the Congress shall proceed to nominate three persons out of each State, and the secretary of Congress shall strike in behalf of such party absent or refusing; and the judgement and sentence of the court to be appointed, in the manner before prescribed, shall be final and conclusive; and if any of the parties shall refuse to submit to the authority of such court, or to appear or defend their claim or cause, the court shall nevertheless proceed to pronounce sentence, or judgement, which shall in like manner be final and decisive, the judgement or sentence and other proceedings being in either case transmitted to Congress, and lodged among the acts of Congress for the security of the parties concerned: provided that every commissioner, before he sits in judgement, shall take an oath to

be administered by one of the judges of the supreme or superior court of the State, where the cause shall be tried, 'well and truly to hear and determine the matter in question, according to the best of his judgement, without favor, affection or hope of reward': provided also, that no State shall be deprived of territory for the benefit of the United States.

All controversies concerning the private right of soil claimed under different grants of two or more States, whose jurisdictions as they may respect such lands, and the States which passed such grants are adjusted, the said grants or either of them being at the same time claimed to have originated antecedent to such settlement of jurisdiction, shall on the petition of either party to the Congress of the United States, be finally determined as near as may be in the same manner as is before presecribed for deciding disputes respecting territorial jurisdiction between different States.

The United States in Congress assembled shall also have the sole and exclusive right and power of regulating the alloy and value of coin struck by their own authority, or by that of the respective States -- fixing the standards of weights and measures throughout the United States -- regulating the trade and managing all affairs with the Indians, not members of any of the States, provided that the legislative right of any State within its own limits be not infringed or violated -- establishing or regulating post offices from one State to another, throughout all the United States, and exacting such postage on the papers passing through the same as may be requisite to defray the expenses of the said office -- appointing all officers of the land forces, in the service of the United States, excepting regimental officers -- appointing all the officers of the naval forces, and commissioning all officers whatever in the service of the United States -- making rules for the government and regulation of the said land and naval forces, and directing their operations.

The United States in Congress assembled shall have authority to appoint a committee, to sit in the recess of Congress, to be denominated 'A Committee of the States', and to consist of one delegate from each State; and to appoint such other committees and civil officers as may be necessary for managing the general affairs of the United States under their direction -- to appoint one of their members to preside, provided that no person be allowed to serve in the office of president more than one year in any term of three years; to ascertain the necessary sums of money to be raised for the service of the United States, and to appropriate and apply the same for defraying the public expenses -- to borrow money, or emit bills on the credit of the United States, transmitting every half-year to the respective States an account of the sums of money so borrowed or emitted -- to build and equip a navy -- to agree upon the number of land forces, and to make requisitions from each State for its quota, in proportion to the number of white inhabitants in such State; which requisition shall be binding, and thereupon the legislature of each State shall appoint the regimental officers, raise the men and cloath, arm and equip them in a solid-like manner, at the expense of the United States; and the officers and men so cloathed, armed and equipped shall march to the place appointed, and within the time agreed on by the United States in Congress assembled. But if the United States in Congress assembled shall, on consideration of circumstances judge proper that any State should not raise men, or should raise

a smaller number of men than the quota thereof, such extra number shall be raised, officered, cloathed, armed and equipped in the same manner as the quota of each State, unless the legislature of such State shall judge that such extra number cannot be safely spread out in the same, in which case they shall raise, officer, cloath, arm and equip as many of such extra number as they judeg they can be safely spared. And the officers and men so cloathed, armed, and equipped, shall march to the place appointed, and within the time agreed on by the United States in Congress assembled.

The United States in Congress assembled shall never engage in a war, nor grant letters of marque or reprisal in time of peace, nor enter into any treaties or alliances, nor coin money, nor regulate the value thereof, nor ascertain the sums and expenses necessary for the defense and welfare of the United States, or any of them, nor emit bills, nor borrow money on the credit of the United States, nor appropriate money, nor agree upon the number of vessels of war, to be built or purchased, or the number of land or sea forces to be raised, nor appoint a commander in chief of the army or navy, unless nine States assent to the same: nor shall a question on any other point, except for adjourning from day to day be determined, unless by the votes of the majority of the United States in Congress assembled.

The Congress of the United States shall have power to adjourn to any time within the year, and to any place within the United States, so that no period of adjournment be for a longer duration than the space of six months, and shall publish the journal of their proceedings monthly, except such parts thereof relating to treaties, alliances or military operations, as in their judgement require secrecy; and the yeas and nays of the delegates of each State on any question shall be entered on the journal, when it is desired by any delegates of a State, or any of them, at his or their request shall be furnished with a transcript of the said journal, except such parts as are above excepted, to lay before the legislatures of the several States.

## X.

The Committee of the States, or any nine of them, shall be authorized to execute, in the recess of Congress, such of the powers of Congress as the United States in Congress assembled, by the consent of the nine States, shall from time to time think expedient to vest them with; provided that no power be delegated to the said Committee, for the exercise of which, by the Articles of Confederation, the voice of nine States in the Congress of the United States assembled be requisite.

## XI.

Canada acceding to this confederation, and adjoining in the measures of the United States, shall be admitted into, and entitled to all the advantages of this Union; but no other colony shall be admitted into the same, unless such admission be agreed to by nine States.

## XII.

All bills of credit emitted, monies borrowed, and debts contracted by, or under the authority of Congress, before the assembling of the United States, in pursuance of the present confederation, shall be deemed and considered as a charge against the United States, for payment and satisfaction whereof the said United States, and the public faith are hereby solemnly pleged.

## XIII.

Every State shall abide by the determination of the United States in Congress assembled, on all questions which by this confederation are submitted to them. And the Articles of this Confederation shall be inviolably observed by every State, and the Union shall be perpetual; nor shall any alteration at any time hereafter be made in any of them; unless such alteration be agreed to in a Congress of the United States, and be afterwards confirmed by the legislatures of every State.

And Whereas it hath pleased the Great Governor of the World to incline the hearts of the legislatures we respectively represent in Congress, to approve of, and to authorize us to ratify the said Articles of Confederation and perpetual Union. Know Ye that we the undersigned delegates, by virtue of the power and authority to us given for that purpose, do by these presents, in the name and in behalf of our respective constituents, fully and entirely ratify and confirm each and every of the said Articles of Confederation and perpetual Union, and all and singular the matters and things therein contained: And we do further solemnly plight and engage the faith of our respective constituents, that they shall abide by the determinations of the United States in Congress assembled, on all questions, which by the said Confederation are submitted to them. And that the Articles thereof shall be inviolably observed by the States we respectively represent, and that the Union shall be perpetual.

In Witness whereof we have hereunto set our hands in Congress. Done at Philadelphia in the State of Pennsylvania the ninth day of July in the Year of our Lord One Thousand Seven Hundred and Seventy-Eight, and in the Third Year of the independence of America.

Agreed to by Congress 15 November 1777 In force after ratification by Maryland, 1 March 1781

Source:
Documents Illustrative of the Formation of the Union of the American States.
Government Printing Office. 1927.
House Document No. 398.

# Exhibit K
# 2:21 cv-11888-SJM-APP

*Special*

## AFFIDAVIT OF ACCEPTANCE and ACKNOWLEDGEMENT

**I DECLARE** that the collection of the Archivist of the United States contains a publication entitled the *1787 Treaty of Marrakesh*, and that the attached reproduction, under the seal of the National Archives of the United States, is a true and correct copy of the documents(s) in its' possession that work, now in the possession of __houston, lasean dejong__, *Moor grantee/ beneficiary,* RECOVEYED, and GRANTED, on special deposit to the SEAN HOUSTON-*EL* FOUNDATION TRUST as trust res for the benefit of its beneficiaries.

**Further Affiant Sayeth Naught**

Performed in proper person, in his own right, who has attained the Age of Majority with *manifest special intent and purpose,* freewill act and Deed:

**I DECLARE,** under penalty of perjury under the laws of michigan and the united states of america that the foregoing is true and correct.  Executed: _____ *4th September,* 20 *21* .

By: _houston, lasean dejong_

houston, lasean dejong, *grantee/grantor/heir/beneficiary*
a private Moor americas aboriginal illinoisan national,
*"but not citizen of the united states for the district of columbia,
nor citizen of the united states of america in congress assembled."*
**SPECIAL DEPOSIT, PRIVATE, PRIORITY**

*locus sigilli* (seal)

I am over the age of 18 and not party to the transaction regarding the papers mailed.

nesbitt, david darnell
**Print**

lawson, tryone batson Jr
**Print**

_Nesbitt, david darrell_
**Witness**

_lawson, tryone batson jr_
**Witness**

*locus sigilli* (seal)          *locus sigilli* (seal)



*RA125594909 US.702 Trust*

# State of Michigan



### DEPARTMENT OF STATE
### NOTARY PUBLIC CERTIFICATION

*I, Jocelyn Benson, Secretary of State of the State of Michigan and custodian of the Great Seal of the State, hereby certify that DANA CAROL JEFFERSON, whose notarization is affixed to the annexed instrument, was on the date thereof the duly elected or appointed and qualified Notary Public in and for the County of OAKLAND in this State, and all official acts as such should be given full faith and credit in all Courts of Justice and elsewhere.*

*IN TESTIMONY WHEREOF, I have hereto affixed my signature and Great Seal of the State at Pontiac, this 23rd day of December in the year of our Lord two thousand and nineteen.*



*Jocelyn Benson*

Secretary of State

246-468-7-634647-181

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION



**Us all to whom these presents shall come, Greeting:**

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf, under the seal of the National Archives of the United States, that the attached reproduction(s) is a true and correct copy of documents in his custody.

| SIGNATURE | |
|---|---|
| NAME TREVOR K. PLANTE | DATE 9/7/18 |
| TITLE CHIEF, ARCHIVES 1 REFERENCE SERVICES BRANCH | |
| NAME AND ADDRESS OF DEPOSITORY | |
| National Archives and Records Administration 700 Pennsylvania Avenue, NW Washington, DC 20408 | |

NA FORM 14007 (

















This is a Treaty of Peace and Friendship established between us and the United States of America, which is confirmed, and which we have ordered to be written in this Book and sealed with our Royal Seal at our Court of Morocco on the twenty fifth day of the blessed Month of Shaban, in the year one thousand two hundred, trusting in God it will remain permanent.

1

We declare that both Parties have agreed that this Treaty consisting of twenty five Articles shall be inserted in this Book and delivered to the Honorable Thomas Barclay, the Agent of the United States now at our Court, with whose Approbation it has been made and who is duly authorized on their Part, to treat with us concerning all the Matters contained therein.

2

If either of the Parties shall be at War with any Nation whatever the other Party shall not take a Commission from the Enemy nor fight under their Colors.

3

If either of the Parties shall be at War with any Nation whatever and take a Prize belonging to that Nation, and there shall be found on board Subjects or effects belonging to either of the Parties, the Subjects shall be set at Liberty and the effects returned to the Owners. And if any Goods belonging to any Nation, with whom either of the Parties shall be at War, shall be loaded on Vessels belonging to the other Party, they shall pass free

and

and unmolested without any attempt being made to take or detain them.

4

A Signal or Pass shall be given to all Vessels belonging to both Parties, by which they are to be known when they meet at Sea, and if the Commander of a Ship of War of either Party shall have other Ships under his Convoy, the Declaration of the Commander shall alone be sufficient to exempt any of them from examination.

5

If either of the Parties shall be at War, and shall meet a Vessel at Sea belonging to the other, it is agreed that if an examination is to be made, it shall be done by sending a Boat with two or three Men only, and if any Gun shall be fired and injury done without Reason, the offending Party shall make good all Damages.

6

If any Moor shall bring Citizens of the United States or their Effects to His Majesty, the Citizens shall immediately be set at Liberty and the Effects restored, and in like Manner, if any Moor not a Subject of these Dominions shall make Prize of any of the Citizens of America or their Effects and bring them into any of the Ports of His Majesty, they shall be immediately released, as they will then be considered as under His Majesty's Protection.

f 2

## Treaty with Marrakesh (Morocco) June 28 and July 15, 1786

*Treaty of Peace and Friendship, with                    ; also                    . The treaty was sealed at Morocco with the seal of the Emperor of Morocco June 23, 1786 (25 Shaban, A. H. 1200), and delivered to Thomas Barclay, American Agent, June 28, 1786 (1 Ramadan, A. H. 1200). Original in Arabic. The additional article was signed and sealed at Morocco on behalf of Morocco July 15, 1786 (18 Ramadan, A. H. 1200). Original in Arabic. The Ship-Signals Agreement was signed at Morocco July 6, 1786 (9 Ramadan, A. H. 1200). Original in English.*

Certified English translations of the treaty and of the                    were incorporated in a document signed and sealed by the Ministers Plenipotentiary of the United States, Thomas Jefferson at Paris January 1, 1787, and John Adams at London January 25, 1787.

Treaty and                    ratified by the United States July 18, 1787. As to the ratification generally, see the notes. Treaty and additional article proclaimed July 18, 1787.

                    not specifically included in the ratification and not proclaimed; but copies ordered by Congress July 23, 1787, to be sent to the Executives of the States (Secret Journals of Congress, IV, 869; but see the notes as to this reference).

[Certified Translation of the Treaty and of the                    , with Approval by Jefferson and Adams)

To all Persons to whom these Presents shall come or be made known- Whereas the United States of America in Congress assembled by their Commission bearing date the twelvth day of May One thousand Seven hundred and Eighty four thought proper to constitute John Adams, Benjamin Franklin and Thomas Jefferson their Ministers Plenipotentiary, giving to them or a Majority of them full Powers to confer, treat & negotiate with the Ambassador, Minister or Commissioner of His Majesty the Emperor of Morocco concerning a Treaty of Amity and Commerce, to make & receive propositions for such Treaty and to conclude and sign the same, transmitting it to the United States in Congress assembled for their final Ratification, And by one other (commission bearing date the Eleventh day of March One thousand Seven hundred & Eighty five did further empower the said Ministers Plenipotentiary or a majority of them, by writing under the* hands and Seals to appoint such Agent in the said Business as they might think proper with Authority under the directions and Instructions of the said Ministers to commence & prosecute the said Negotiations & Conferences for the said Treaty provided that the said Treaty should be signed by the said Ministers: And Whereas, We the said John Adams & Thomas Jefferson two of the said Ministers Plenipotentiary (the said Benjamin Franklin being absent) by writing under the Hand and Seal of the said John Adams at London October the fifth, One thousand Seven hundred and Eighty five, & of the said Thomas Jefferson at Paris October the Eleventh of the same Year, did appoint Thomas Barclay, Agent in the Business aforesaid, giving him the Powers therein, which by the said second Commission we were authorized to give, and the said Thomas Barclay in pursuance thereof, hath arranged Articles for a Treaty of Amity and Commerce between the United States of America and His Majesty the Emperor of Morocco, which Articles written in the Arabic Language, confirmed by His said Majesty the Emperor of Morocco & seal'd with His Royal Seal, being translated into the Language of the said United States of America, together with the Attestations thereto annexed are in the following Words, To Wit.

In the name of Almighty God,

This is a Treaty of Peace and Friendship established between us and the United States of America, which is confirmed, and which we have ordered to be written in this Book and sealed with our Royal Seal at our Court of Morocco on the twenty fifth day of the blessed Month of Shaban, in the Year One thousand two hundred, trusting in God it will remain permanent.

## .1.

We declare that both Parties have agreed that this Treaty consisting of twenty five Articles shall be inserted in this Book and delivered to the Honorable Thomas Barclay, the Agent of the United States now at our Court, with whose Approbation it has been made and who is duly authorized on their Part, to treat with us concerning all the Matters contained therein.

## .2.

If either of the Parties shall be at War with any Nation whatever, the other Party shall not take a Commission from the Enemy nor fight under their Colors.

## .3.

If either of the Parties shall be at War with any Nation whatever and take a Prize belonging to that Nation, and there shall be found on board Subjects or Effects belonging to either of the Parties, the Subjects shall be set at Liberty and the Effects returned to the Owners. And if any Goods belonging to any Nation, with whom either of the Parties shall be at War, shall be loaded on Vessels belonging to the other Party, they shall pass free and unmolested without any attempt being made to take or detain them.

## .4.

A Signal or Pass shall be given to all Vessels belonging to both Parties, by which they are to be known when they meet at Sea, and if the Commander of a Ship of War of either Party shall have other Ships under his Convoy, the Declaration of the Commander shall alone be sufficient to exempt any of them from examination.

## .5.

If either of the Parties shall be at War, and shall meet a Vessel at Sea, belonging to the other, it is agreed that if an examination is to be made, it shall be done by sending a Boat with two or three Men only, and if any Gun shall be Bred and injury done without Reason, the offending Party shall make good all damages.

## .6.

If any Moor shall bring Citizens of the United States or their Effects to His Majesty, the Citizens shall immediately be set at Liberty and the Effects restored, and in like Manner, if any Moor not a Subject of these Dominions shall make Prize of any of the Citizens of America or their Effects and bring them into any of the Ports of His Majesty, they shall be immediately released, as they will then be considered as under His Majesty's Protection.

## .7.

If any Vessel of either Party shall put into a Port of the other and have occasion for Provisions or other Supplies, they shall be furnished without any interruption or molestation.

If any Vessel of the United States shall meet with a Disaster at Sea and put into one of our Ports to repair, she shall be at Liberty to land and reload her cargo, without paying any Duty whatever.

## .9.

If any Vessel of the United States shall be cast on Shore on any Part of our Coasts, she shall remain at the disposition of the Owners and no one shall attempt going near her without their Approbation, as she is then considered particularly under our Protection; and if any Vessel of the United States shall be forced to put into our Ports, by Stress of weather or otherwise, she shall not be compelled to land her Cargo, but shall remain in tranquillity untill the Commander shall think proper to proceed on his Voyage.

## .10.

If any Vessel of either of the Parties shall have an engagement with a Vessel belonging to any of the Christian Powers within gunshot of the Forts of the other, the Vessel so engaged shall be defended and protected as much as possible untill she is in safety; And if any American Vessel shall be cast on shore on the Coast of Wadnoon     or any coast thereabout, the People belonging to her shall be protected, and assisted untill by the help of God, they shall be sent to their Country.

## .11.

If we shall be at War with any Christian Power and any of our Vessels sail from the Ports of the United States, no Vessel belonging to the enemy shall follow untill twenty four hours after the Departure of our Vessels; and the same Regulation shall be observed towards the American Vessels sailing from our Ports.-be their enemies Moors or Christians.

## .12.

If any Ship of War belonging to the United States shall put into any of our Ports, she shall not be examined on any Pretence whatever, even though she should have fugitive Slaves on Board, nor shall the Governor or Commander of the Place compel them to be brought on Shore on any pretext, nor require any payment for them.

## .13.

If a Ship of War of either Party shall put into a Port of the other and salute, it shall be returned from the Fort, with an equal Number of Guns, not with more or less.

## .14.

The Commerce with the United States shall be on the same footing as is the Commerce with Spain or as that with the most favored Nation for the time being and their Citizens shall be respected and

esteemed and have full Liberty to pass and repass our Country and Sea Ports whenever they please without interruption.

### .15.

Merchants of both Countries shall employ only such interpreters, & such other Persons to assist them in their Business, as they shall think proper. No Commander of a Vessel shall transport his Cargo on board another Vessel, he shall not be detained in Port, longer than he may think proper, and all persons employed in loading or unloading Goods or in any other Labor whatever, shall be paid at the Customary rates, not more and not less.

### .16.

In case of a War between the Parties, the Prisoners are not to be made Slaves, but to be exchanged one for another, Captain for Captain, Officer for Officer and one private Man for another; and if there shall prove a deficiency on either side, it shall be made up by the payment of one hundred Mexican Dollars for each Person wanting; And it is agreed that all Prisoners shall be exchanged in twelve Months from the Time of their being taken, and that this exchange may be effected by a Merchant or any other Person authorized by either of the Parties.

### .17.

Merchants shall not be compelled to buy or Sell any kind of Goods but such as they shall think proper; and may buy and sell all sorts of Merchandise but such as are prohibited to the other Christian Nations.

### .18.

All goods shall be weighed and examined before they are sent on board, and to avoid all detention of Vessels, no examination shall afterwards be made, unless it shall first be proved, that contraband Goods have been sent on board, in which Case the Persons who took the contraband Goods on board shall be punished according to the Usage and Custom of the Country and no other Person whatever shall be injured, nor shall the Ship or Cargo incur any Penalty or damage whatever.

### .19.

No vessel shall be detained in Port on any presence whatever, nor be obliged to take on board any Article without the consent of the Commander, who shall be at full Liberty to agree for the Freight of any Goods he takes on board.

### .20.

If any of the Citizens of the United States, or any Persons under their Protection, shall have any disputes with each other, the Consul shall decide between the Parties and whenever the Consul shall require any Aid or Assistance from our Government to enforce his decisions it shall be immediately granted to him.

### .21.

If a Citizen of the United States should kill or wound a Moor, or on the contrary if a Moor shall kill or wound a Citizen of the United States, the Law of the Country shall take place and equal Justice shall be rendered, the Consul assisting at the Tryal, and if any Delinquent shall make his escape, the Consul shall not be answerable for him in any manner whatever.

### .22.

If an American Citizen shall die in our Country and no Will shall appear, the Consul shall take possession of his Effects, and if there shall be no Consul, the Effects shall be deposited in the hands of some Person worthy of Trust, untill the Party shall appear who has a Right to demand them, but if the Heir to the Person deceased be present, the Property shall be delivered to him without interruption; and if a Will shall appear, the Property shall descend agreeable to that Will, as soon as the Consul shall declare the Validity thereof.

### .23.

The Consuls of the United States of America shall reside in any Sea Port of our Dominions that they shall think proper; And they shall be respected and enjoy all the Privileges which the Consuls of any other Nation enjoy, and if any of the Citizens of the United States shall contract any Debts or engagements, the Consul shall not be in any Manner accountable for them, unless he shall have given a Promise in writing for the payment or fulfilling thereof, without which promise in Writing no Application to him for any redress shall be made.

### .24.

If any differences shall arise by either Party infringing on any of the Articles of this Treaty, Peace and Harmony shall remain notwithstanding in the fullest force, untill a friendly Application shall be made for an Arrangement, and untill that Application shall be rejected, no appeal shall be made to Arms. And if a War shall break out between the Parties, Nine Months shall be granted to all the Subjects of both Parties, to dispose of their Effects and retire with their Property. And it is further declared that whatever indulgences in Trade or otherwise shall be granted to any of the Christian Powers, the Citizens of the United States shall be equally entitled to them.

### .25.

This Treaty shall continue in full Force, with the help of God for Fifty Years.

We have delivered this Book into the Hands of the before-mentioned Thomas Barclay on the first day of the blessed Month of Ramadan, in the Year One thousand two hundred.

I certify that the annex'd is a true Copy of the Translation made by Issac Cardoza Nunez, Interpreter at Morocco, of the treaty between the Emperor of Morocco and the United States of America.

THOS BARCLAY

# Exhibit L
# 2:21 cv-11888-SJM-APP

*Special*

## AFFIDAVIT OF ACCEPTANCE and ACKNOWLEDGEMENT

**I DECLARE** that the collection of the Archivist of the United States contains a publication entitled the *1789 Constitution for the United States of America*, and that the attached reproduction, under the seal of the National Archives of the United States, is a true and correct copy of the documents(s) in its' possession that work, now in the possession of _houston, lasean dejong, *Moor grantee/ beneficiary*, RECOVEYED, and GRANTED, on special deposit to the SEAN HOUSTON-*EL* FOUNDATION TRUST as trust res for the benefit of its beneficiaries.

**Further Affiant Sayeth Naught**

Performed in proper person, in his own right, who has attained the Age of Majority with *manifest special intent and purpose,* freewill act and Deed:

*I DECLARE,* under penalty of perjury under the laws of the michigan and the united states of america that the foregoing is true and correct.  Executed: _____ 4th September 20 21 .

By: _houston, lasean dejong_____

**houston, lasean dejong**, *grantee/grantor/heir/beneficiary*
a private Moor americas aboriginal illinoisan national,
*"but not citizen of the united states for the district of columbia,*
*nor citizen of the united states of america in congress assembled."*
**SPECIAL DEPOSIT, PRIVATE, PRIORITY**

*locus sigilli* (seal)

I am over the age of 18 and not party to the transaction regarding the papers mailed.

nesbitt, david darnell
**Print**

lawson, tryone batson Jr
**Print**

nesbitt, david darnell
**Witness**

lawson, tryone batson jr
**Witness**

*locus sigilli* (seal)

*locus sigilli* (seal)

A# 125594909 U.S. Trust
702



# State of Michigan



## DEPARTMENT OF STATE
## NOTARY PUBLIC CERTIFICATION

I, Jocelyn Benson, Secretary of State of the State of Michigan, and custodian of the Great Seal of the State, do hereby certify, that JACQUELINE SMITH whose signature is affixed to the within instrument, or name on the said instrument, was a notary or approved and qualified Notary Public in and for the County of OAKLAND in this State, and all official acts as such should be given full faith and credit in all Courts of Justice and elsewhere.

IN TESTIMONY WHEREOF, I have hereto affixed my signature, and Great Seal of the State, at Lansing, this 22nd day of December, in the year of our Lord two thousand and Nineteen.



*Jocelyn Benson*

Secretary of State

246468-2-634611-181

## NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

### To all to whom these presents shall come, Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf, under the seal of the National Archives of the United States, that the attached reproduction(s) is a true and correct copy of documents in his custody.

| SIGNATURE | | |
|---|---|---|
| *J. Juliette A.* | | |
| NAME T. JULIETTE ARAI | DATE 9/26/18 | |
| TITLE CHIEF, ARCHIVES 1 REFERENCE SECTION | | |
| NAME AND ADDRESS OF DEPOSITORY National Archives and Records Administration 700 Pennsylvania Avenue, NW Washington, DC 20408 | | |

NA FORM 14007 (10-86)





## Article II.



## Article III.

## Article IV.

Case 2:21-cv-11888-SJM-APP   ECF No. 5, PageID.424   Filed 09/07/21   Page 48 of 100




*1789 Constitution for the United States of America*

Page 11 of 20

# Constitution for the United States of America

**We, the people of the United States**, in order to form a more perfect Union, establish justice, insure domestic tranquility, provide for the common defense, promote the general welfare, and secure the blessings of liberty to ourselves and our posterity, do ordain and establish this Constitution for the United States of America.

# Article I

### Section 1 - Legislative powers; in whom vested

All legislative powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives.

### Section 2 - House of Representatives, how and by whom chosen Qualifications of a Representative. Representatives and direct taxes, how apportioned. Enumeration. Vacancies to be filled. Power of choosing officers, and of impeachment.

1. The House of Representatives shall be composed of members chosen every second year by the people of the several States, and the elector in each State shall have the qualifications requisite for electors of the most numerous branch of the State Legislature.

2. No person shall be a Representative who shall not have attained the age of twenty-five years, and been seven years a Citizen of the United States, and who shall not, when elected, be an inhabitant of that State in which he shall be chosen.

3. Representatives and direct taxes shall be apportioned among the several States which may be included within this Union, according to their respective numbers, which shall be determined by adding the whole number of free persons, including those bound to service for a term of years, *and excluding Indians not taxed*, three-fifths of all other persons). The actual enumeration shall be made within three years after the first meeting of the Congress of the United States, and within every subsequent term of ten years, in such manner as they shall by law direct. The number of Representatives shall not exceed one for every thirty thousand, but each State shall have at least one Representative; and until such enumeration shall be made, the State of New Hampshire shall be entitled to choose three, Massachusetts eight, Rhode Island and Providence Plantations one, Connecticut five, New York six, New Jersey four, Pennsylvania eight, Delaware one, Maryland six, Virginia ten, North Carolina five, South Carolina five, and Georgia three.

4. When vacancies happen in the representation from any State, the Executive Authority thereof shall issue writs of election to fill such vacancies.

5. The House of Representatives shall choose their Speaker and other officers; and shall have the sole power of impeachment.

**Section 3 - Senators, how and by whom chosen. How classified. State Executive, when to make temporary appointments, in case, etc. Qualifications of a Senator. President of the Senate, his right to vote. President pro tem., and other officers of the Senate, how chosen. Power to try impeachments. When President is tried, Chief Justice to preside. Sentence.**

1. The Senate of the United States shall be composed of two Senators from each State, *(chosen by the Legislature thereof,)* for six years; and each Senator shall have one vote.

2. Immediately after they shall be assembled in consequence of the first election, they shall be divided as equally as may be into three classes. The seats of the Senators of the first class shall be vacated at the expiration of the second year, of the second class at the expiration of the fourth year, and of the third class at the expiration of the sixth year, so that one-third may be chosen every second year; and if vacancies happen by resignation, or otherwise, during the recess of the Legislature of any State, the Executive thereof may make temporary appointments until the next meeting of the Legislature, which shall then fill such vacancies.

3. No person shall be a Senator who shall not have attained to the age of thirty years, and been nine years a Citizen of the United States, and who shall not, when elected, be an inhabitant of that State for which he shall be chosen.

4. The Vice-President of the United States shall be President of the Senate, but shall have no vote, unless they be equally divided.

5. The Senate shall choose their other officers, and also a President pro tempore, in the absence of the Vice President, or when he shall exercise the office of the President of the United States.

6. The Senate shall have the sole power to try all impeachments. When sitting for that purpose, they shall be on oath or affirmation. When the President of the United States is tried, the Chief Justice shall preside: and no person shall be convicted without the concurrence of two-thirds of the members present.

7. Judgement in cases of impeachment shall not extend further than to removal from office, and disqualification to hold and enjoy any office of honor, trust, or profit under the United States: but the party convicted shall nevertheless be liable and subject to indictment, trial, judgement and punishment, according to law.

**Section 4 - Times, etc., of holding elections, how prescribed. One session in each year.**

1. The times, places and manner of holding elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by law make or alter such regulations, except as to the places of choosing Senators.

2. The Congress shall assemble at least once in every year, and such meeting shall *be on the first Monday in December,* unless they by law appoint a different day.

**Section 5 - Membership, Quorum, Adjournments, Rules, Power to punish or expel. Journal. Time of adjournments, how limited, etc.**

1. Each House shall be the judge of the elections, returns and qualifications of its own members, and a majority of each shall constitute a quorum to do business; but a smaller number may adjourn from day to day, and may be authorized to compel the attendance of absent members, in such manner, and under such penalties as each House may provide.

2. Each House may determine the rules of its proceedings, punish its members for disorderly behavior, and, with the concurrence of two-thirds, expel a member.

3. Each House shall keep a journal of its proceedings, and from time to time publish the same, excepting such parts as may in their judgement require secrecy; and the yeas and nays of the members of either House on any question shall, at the desire of one-fifth of those present, be entered on the journal.

4. Neither House, during the session of Congress, shall, without the consent of the other, adjourn for more than three days, nor to any other place than that in which the two Houses shall be sitting.

**Section 6 - Compensation, Privileges, Disqualification in certain cases.**

1. The Senators and Representatives shall receive a compensation for their services, to be ascertained by law, and paid out of the Treasury of the United States. They shall in all cases, except treason, felony and breach of the peace, be privileged from arrest during their attendance at the session of their respective Houses, and in going to and returning from the same; and for any speech or debate in either House, they shall not be questioned in any other place.

2. No Senator or Representative shall, during the time for which he was elected, be appointed to any civil office under the authority of the United States, which shall have increased during such time; and no person holding any office under the United States, shall be a member of either House during his continuance in office.

**Section 7 - House to originate all revenue bills. Veto. Bill may be passed by two-thirds of each House, notwithstanding, etc. Bill, not returned in ten days to become a law. Provisions as to orders, concurrent resolutions, etc.**

1. All bills for raising revenue shall originate in the House of Representatives; but the Senate may propose or concur with amendments as on other bills.

2. Every bill which shall have passed the House of Representatives and the Senate, shall, before it become a law, be presented to the president of the United States; if he approve, he shall sign it, but if not, he shall return it, with his objections, to that house in which it shall have originated, who shall enter the objections at large on their journal, and proceed to reconsider it. If after such reconsideration, two thirds of that house shall agree to pass the bill, it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered, and if

approved by two-thirds of that house, it shall become a law. But in all such cases the votes of both houses shall be determined by yeas and nays, and the names of the persons voting for and against the bill shall be entered on the journal of each house respectively. If any bill shall not be returned by the president within ten days (Sundays excepted) after it shall have been presented to him, the same shall be a law, in like manner as if he had signed it, unless the Congress by their adjournment prevent its return, in which case it shall not be a law.

3. Every order, resolution, or vote to which the concurrence of the Senate and House of Representatives may be necessary (except on a question of adjournment) shall be presented to the president of the United States; and before the same shall take effect, shall be approved by him, or, being disapproved by him, shall be re-passed by two-thirds of the Senate and House of Representatives, according to the rules and limitations prescribed in the case of a bill.

### Section 8 - Powers of Congress

The Congress shall have the power

1. To lay and collect taxes, duties, imposts and excises, to pay the debts and provide for the common defence and general welfare of the United States; but all duties, imposts and excises shall be uniform throughout the United States:

2. To borrow money on the credit of the United States:

3. To regulate commerce with foreign nations, and among the several states, and with the Indian tribes:

4. To establish an uniform rule of naturalization, and uniform laws on the subject of bankruptcies throughout the United States:

5. To coin money, regulate the value thereof, and of foreign coin, and fix the standard of weights and measures:

6. To provide for the punishment of counterfeiting the securities and current coin of the United States:

7. To establish post-offices and post-roads:

8. To promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries:

9. To constitute tribunals inferior to the supreme court:

10. To define and punish piracies and felonies committed on the high seas, and offences against the law of nations:

11. To declare war, grant letters of marque and reprisal, and make rules concerning captures on land and water:

12. To raise and support armies, but no appropriation of money to that use shall be for a longer term than two years:

13. To provide and maintain a navy:

14. To make rules for the government and regulation of the land and naval forces:

15. To provide for calling forth the militia to execute the laws of the union, suppress insurrections and repel invasions:

16. To provide for organizing, arming and disciplining the militia, and for governing such part of them as may be employed in the service of the United States, reserving to the states respectively, the appointment of the officers, and the authority of training the militia according to the discipline prescribed by Congress:

17. To exercise exclusive legislation in all cases whatsoever, over such district (not exceeding ten miles square) as may, by cession of particular states, and the acceptance of Congress, become the seat of the government of the United States, and to exercise like authority over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dock-yards, and other needful buildings: And,

18. To make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this constitution in the government of the United States, or in any department or officer thereof.

Section 9 - Provision as to migration or importation of certain persons. Habeas Corpus , Bills of attainder, etc. Taxes, how apportioned. No export duty. No commercial preference. Money, how drawn from Treasury, etc. No titular nobility. Officers not to receive presents, etc.

1. The migration or importation of such persons as any of the states now existing shall think proper to admit, shall not be prohibited by the Congress prior to the year 1808, but a tax or duty may be imposed on such importations, not exceeding 10 dollars for each person.

2. The privilege of the writ of habeas corpus shall not be suspended, unless when in cases of rebellion or invasion the public safety may require it.

3. No bill of attainder or ex post facto law shall be passed.

4. No capitation, or other direct tax shall be laid unless in proportion to the census or enumeration herein before directed to be taken.

5. No tax or duty shall be laid on articles exported from any state.

6. No preference shall be given by any regulation of commerce or revenue to the ports of one state over those of another: nor shall vessels bound to, or from one state, be obliged to enter, clear, or pay duties in another.

7. No money shall be drawn from the treasury but in consequence of appropriations made by law; and a regular statement and account of the receipts and expenditures of all public money shall be published from time to time.

8. No title of nobility shall be granted by the United States: And no person holding any office or profit or trust under them, shall, without the consent of the Congress, accept of any present, emolument, office, or title, of any kind whatever, from any king, prince, or foreign state.

**Section 10 - States prohibited from the exercise of certain powers.**

1. No state shall enter into any treaty, alliance, or confederation; grant letters of marque and reprisal; coin money; emit bills of credit; make any thing but gold and silver coin a tender in payment of debts; pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts, or grant any title of nobility.

2. No state shall, without the consent of the Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws; and the net produce of all duties and imposts, laid by any state on imports or exports, shall be for the use of the treasury of the United States; and all such laws shall be subject to the revision and control of the Congress.

3. No state shall, without the consent of Congress, lay any duty of tonnage, keep troops, or ships of war in time of peace, enter into any agreement or compact with another state, or with a foreign power, or engage in a war, unless actually invaded, or in such imminent danger as will not admit of delay.

# Article III

**Section 1- Judicial powers. Tenure. Compensation.**

**The judicial power of the United States, shall be vested in one supreme court, and in such inferior courts as the Congress may, from time to time, ordain and establish. The judges, both of the supreme and inferior courts, shall hold their offices during good behaviour, and shall, at stated times, receive for their services a compensation, which shall not be diminished during their continuance in office.**

**Section 2 - Judicial power; to what cases it extends. Original jurisdiction of Supreme Court Appellate. Trial by Jury, etc. Trial, where**

**1. The judicial power shall extend to all cases, in law and equity, arising under this constitution, the laws of the United States, and treaties made, or which shall be made under their authority; to all cases affecting ambassadors, other public ministers and consuls; to all cases of admiralty and maritime jurisdiction; to controversies to which the United States shall be a party; to controversies between two or more states, between a state**

and Citizens of another state, between Citizens of different states, between Citizens of the same state, claiming lands under grants of different states, and between a state, or the Citizens thereof, and foreign states, Citizens or subjects.

2. In all cases affecting ambassadors, other public ministers and consuls, and those in which a state shall be a party, the supreme court shall have original jurisdiction. In all the other cases before-mentioned, the supreme court shall have appellate jurisdiction, both as to law and fact, with such exceptions, and under such regulations as the Congress shall make.

3. The trial of all crimes, except in cases of impeachment, shall be by jury; and such trial shall be held in the state where the said crimes shall have been committed; but when not committed within any state, the trial shall be at such place or places as the Congress may by law have directed.

**Section 3 - Treason defined. Proof of. Punishment of.**

1. Treason against the United States shall consist only in levying war against them, or in adhering to their enemies, giving them aid and comfort. No person shall be convicted of treason unless on the testimony of two witnesses to the same overt act, or on confession in open court.

2. The Congress shall have power to declare the punishment of treason, but no attainder of treason shall work corruption of blood, or forfeiture, except during the life of the person attainted.

# Article IV

**Section 1 - Each State to give credit to the public acts, etc. of every other State.**

Full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state. And the Congress may by general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof.

**Section 2 - Privileges of Citizens of each State. Fugitives from Justice to be delivered up. Persons held to service having escaped, to be delivered up.**

1. The Citizens of each state shall be entitled to all privileges and immunities of Citizens in the several states.

2. A person charged in any state with treason, felony, or other crime, who shall flee justice, and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime.

*3.* No person held to service or labour in one state, under the laws thereof, escaping into another, shall, in consequence of any law or regulation therein, be discharged from such service or labour, but shall be delivered up on claim of the party to whom *such service or labour may be due.*

**Section 3 - Admission of new States. Power of Congress over territory and other property.**

1. New states may be admitted by the Congress into this union; but no new state shall be formed or erected within the jurisdiction of any other state, nor any state be formed by the junction of two or more states, without the consent of the legislatures of the states concerned, as well as of the Congress.

2. The Congress shall have power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States; and nothing in this constitution shall be so construed as to prejudice any claims of the United States, or of any particular state.

**Section 4 - Republican form of government guaranteed. Each State to be protected.**

The United States shall guarantee to every state in this union, a republican form of government, and shall protect each of them against invasion; and on application of the legislature, or of the executive (when the legislature cannot be convened), against domestic violence.

## Article VI

**Certain debts, ect. declared valid, Supremacy of Constitution, treaties, and laws of the United States, Oath to support Constitution, by whom taken. No religious test.**

**1. All debts contracted and engagements entered into, before the adoption of this constitution, shall be as valid against the United States under this constitution, as under the confederation.**

**2. This constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding.**

**3. The senators and representatives before-mentioned, and the members of the several state legislatures, and all executive and judicial officers, both of the United States and of the several states, shall be bound by oath or affirmation, to** support this constitution; but no religious test shall ever be required as a qualification to any office or public trust under the United States.

# Exhibit M
# 2:21 cv-11888-SJM-APP

# Special

## AFFIDAVIT OF ACCEPTANCE and ACKNOWLEDGEMENT

I DECLARE that this is a true and correct copy of the 1796 Treaty of Tripoli, in the possession of
 houston, lasean dejong, *Moor grantee/beneficiary*, RECOVEYED, and GRANTED, on special deposit
to the SEAN HOUSTON-*EL* FOUNDATION TRUST as trust res for the benefit of its beneficiaries.

**Further Affiant Sayeth Naught**

Performed in proper person, in his own right, who has attained the Age of Majority with *manifest special
intent and purpose,* freewill act and Deed:

*I DECLARE,* under penalty of perjury under the laws of michigan and the united states of america
that the foregoing is true and correct. Executed: _____4ᵗʰ September_____, 20_21_ .

By: _____houston, lasean dejong_____

> **houston, lasean dejong**, *grantee/grantor/heir/beneficiary*
> a private Moor americas aboriginal illinoisan national,
> *"but not citizen of the united states for the district of columbia,
> nor citizen of the united states of america in congress assembled."*
> **SPECIAL DEPOSIT, PRIVATE, PRIORITY**

*locus sigilli* (seal)

I am over the age of 18 and not party to the transaction regarding the papers mailed.

_nesbitt, david darnell_
**Print**

_nesbitt, david darnell_
**Witness**

_lawson, tryone batson, jr_
**Print**

_law, tyn bats ji_
**Witness**

*locus sigilli* (seal)

*locus sigilli* (seal)

RF 125594909 US.702 trust

# State of Michigan



## DEPARTMENT OF STATE
## NOTARY PUBLIC CERTIFICATION

*I, Jocelyn Benson, Secretary of State of the State of Michigan and custodian of the Great Seal of the State, hereby certify that DANA CAROL JEFFERSON, whose notarization is affixed to the annexed instrument, was on the date thereof the duly elected or appointed and qualified Notary Public in and for the County of OAKLAND in this State, and all official acts as such should be given full faith and credit in all Courts of Justice and elsewhere.*

*IN TESTIMONY WHEREOF, I have hereto affixed my signature and Great Seal of the State, at Lansing, this 23rd day of December, in the year of our Lord two thousand and nineteen.*



*Jocelyn Benson*

*Secretary of State*

**246468-7-634640-181**

Case 2:21-cv-11888-SJM-APP ECF No. 5, PageID.437 Filed 09/01/21 Page 61 of 100



NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

To all to whom these presents shall come, Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf, under the seal of the National Archives of the United States, that the attached reproduction(s) is a true and correct copy of documents in his custody.

TREVOR K. PLANTE

CHIEF, ARCHIVES 1 REFERENCE SERVICES BRANCH

National Archives and Records Administration
700 Pennsylvania Avenue, N.W.
Washington, DC 20408

# Treaty

of Peace and Friendship between the United States of America and the Bey and Subjects of Tripoli of Barbary.

## Article 1.

There is a firm and perpetual peace and friendship between the United States of America and the Bey and subjects of Tripoli of Barbary, made by the free consent of both parties and guaranteed by the most potent Dey and Regency of Algiers.

[illegible]

Article 2

If any goods belonging to any nation with which either of the parties is at war shall be loaded on board of vessels belonging to the other party, they shall pass free, and no attempt shall be made to take or detain them.

[illegible]

Article 3.

If any citizens, subjects or effects belonging to either party shall be found on board a prize vessel taken from an enemy by the other party, such citizens or subjects shall be set at liberty, and the effects restored to the owners.

JB

[illegible]

Article 5.

*[handwritten text, illegible]*

*[Arabic handwritten text, illegible]*























Article 6

Vessels of either party putting into the ports of the other and having need of provisions or other supplies, they shall be furnished at the market price. And if any such vessel shall so put in from a disaster at sea and have occasion to repair, she shall be at liberty to land and reembark her cargo without paying any duties. But in no case shall she be compelled to land her cargo.

[illegible]

Article 11

As the government of the United States of America is not in any sense founded on the Christian Religion, — as it has in itself no character of enmity against the laws, religion or tranquility of Musselmen, — and as the said States never have entered into any war or act of hostility against any Mehomitan nation, it is declared by the parties that no pretext arising from religious opinions shall ever interrupt the harmony existing between the two countries.

[illegible]

Praise be to God &c—

The present writing done by our hand and delivered to the American Captain O'Brien makes known that he has delivered to us forty thousand Spanish dollars, — thirteen watches of gold, silver and pinsbach, — five rings, of which three of diamonds, one of saphire, and one with a watch in it, — one hundred & forty piques of cloth, and four caftans of brocade, — and these on account of the peace concluded with the Americans.

Given at Tripoli in Barbary the 20th day of Jumad 1211 corresponding with the 3d day of Novr 1796.

(Signed) Jussuf Bashaw Bey whom God exalt

The foregoing is a true copy of the receipt signed by Jussuf Bashaw Bey of Tripoli.

(Signed) Hassan Bashaw Dey of Algiers.

The foregoing is a literal translation of the original Arabic on the opposite page.

Joel Barlow

[illegible]

### Treaty of Peace and Friendship, Signed at Tripoli November 4, 1796

Treaty of Peace and Friendship, signed at Tripoli November 4, 1796 (3 Ramada I, A. H. 1211), and at Algiers January 3, 1797 (4 Rajab, A. H. 1211). Original in Arabic. Submitted to the Senate May 29, 1797. (Message of May 26, 1797.) Resolution of advice and consent June 7, 1797. Ratified by the United States June 10, 1797. As to the ratification generally, see the notes. Proclaimed Jane 10, 1797.

The following fourteen pages of Arabic are a reproduction of the text in the original treaty book, first the pages of the treaty in left-to-right order of pagination, and then the " receipt " and the " note " mentioned, according to the Barlow translation, in Article 10. Following the Arabic and in the same order, is the translation of Joel Barlow as written in the treaty book-the twelve articles of the treaty, the "receipt," and the "note"; and after these is the approval of David Humphreys from the same document, which is fully described in the notes. Following those texts is the annotated translation of 1930.

## [Translation]

### Treaty of Peace and Friendship between the United States of America and the Bey and Subjects of Tripoli of Barbary.

## ARTICLE 1.
There is a firm and perpetual Peace and friendship between the United States of America and the Bey and subjects of Tripoli of Barbary, made by the free consent of both parties, and guaranteed by the most potent Dey & regency of Algiers.

## ARTICLE 2.
If any goods belonging to any nation with which either of the parties is at war shall be loaded on board of vessels belonging to the other party they shall pass free, and no attempt shall be made to take or detain them.

## ARTICLE 3.
If any citizens, subjects or effects belonging to either party shall be found on board a prize vessel taken from an enemy by the other party, such citizens or subjects shall be set at liberty, and the effects restored to the owners.

## ARTICLE 4.
Proper passports are to be given to all vessels of both parties, by which they are to be known. And, considering the distance between the two countries, eighteen months from the date of this treaty shall be allowed for procuring such passports. During this interval the other papers belonging to such vessels shall be sufficient for their protection.

## ARTICLE 5
A citizen or subject of either party having bought a prize vessel condemned by the other party or by any other nation, the certificate of condemnation and bill of sale shall be a sufficient passport for such vessel for one year; this being a reasonable time for her to procure a proper passport.

## ARTICLE 6
Vessels of either party putting into the ports of the other and having need of provissions or other supplies, they shall be furnished at the market price. And if any such vessel shall so put in from a disaster at

sea and have occasion to repair, she shall be at liberty to land and reembark her cargo without paying any duties. But in no case shall she be compelled to land her cargo.

# ARTICLE 7.

Should a vessel of either party be cast on the shore of the other, all proper assistance shall be given to her and her people; no pillage shall be allowed; the property shall remain at the disposition of the owners, and the crew protected and succoured till they can be sent to their country.

# ARTICLE 8.

If a vessel of either party should be attacked by an enemy within gun-shot of the forts of the other she shall be defended as much as possible. If she be in port she shall not be seized or attacked when it is in the power of the other party to protect her. And when she proceeds to sea no enemy shall be allowed to pursue her from the same port within twenty four hours after her departure.

# ARTICLE 9.

The commerce between the United States and Tripoli,-the protection to be given to merchants, masters of vessels and seamen,- the reciprocal right of establishing consuls in each country, and the privileges, immunities and jurisdictions to be enjoyed by such consuls, are declared to be on the same footing with those of the most favoured nations respectively.

# ARTICLE 10.

The money and presents demanded by the Bey of Tripoli as a full and satisfactory consideration on his part and on the part of his subjects for this treaty of perpetual peace and friendship are acknowledged to have been recieved by him previous to his signing the same, according to a reciept which is hereto annexed, except such part as is promised on the part of the United States to be delivered and paid by them on the arrival of their Consul in Tripoly, of which part a note is likewise hereto annexed. And no presence of any periodical tribute or farther payment is ever to be made by either party.

# ARTICLE 11.

As the government of the United States of America is not in any sense founded on the Christian Religion,-as it has in itself no character of enmity against the laws, religion or tranquility of Musselmen,-and as the said States never have entered into any war or act of hostility against any Mehomitan nation, it is declared by the parties that no pretext arising from religious opinions shall ever produce an interruption of the harmony existing between the two countries.

# ARTICLE 12.

In case of any dispute arising from a notation of any of the articles of this treaty no appeal shall be made to arms, nor shall war be declared on any pretext whatever. But if the (consul residing at the place where the dispute shall happen shall not be able to settle the same, an amicable referrence shall be made to the mutual friend of the parties, the Dey of Algiers, the parties hereby engaging to abide by his decision. And he by virtue of his signature to this treaty engages for himself and successors to declare the justice of the case according to the true interpretation of the treaty, and to use all the means in his power to enforce the observance of the same.

Signed and sealed at Tripoli of Barbary the 3d day of Jumad in the year of the Higera 1211-corresponding with the 4th day of Novr 1796 by

JUSSUF BASHAW MAHOMET Bey
SOLIMAN Kaya
MAMET Treasurer
GALIL Genl of the Troops
AMET Minister of Marine
MAHOMET Coml of the city
AMET Chamberlain
MAMET Secretary
ALLY-Chief of the Divan

Signed and sealed at Algiers the 4th day of Argib 1211-corresponding with the 3d day of January 1797 by

HASSAN BASHAW Dey
and by the Agent plenipotentiary of the United States of America
[Seal] Joel BARLOW

## [The "Receipt"]

Praise be to God &c-

The present writing done by our hand and delivered to the American Captain OBrien makes known that he has delivered to us forty thousand Spanish dollars,-thirteen watches of gold, silver & pinsbach,-five rings, of which three of diamonds, one of saphire and one with a watch in it, One hundred & forty piques of cloth, and four caftans of brocade,-and these on account of the peace concluded with the Americans.

Given at Tripoli in Barbary the 20th day of Jumad 1211, corresponding with the 21st day of Novr 1796-

(Signed) JUSSUF BASHAW-Bey whom God Exalt

The foregoing is a true copy of the reciept given by Jussuf Bashaw- Bey of Tripoli-

(Signed) HASSAN BASHAW-Dey of Algiers.

The foregoing is a literal translation of the writing in Arabic on the opposite page.

JOEL BARLOW

## [The " Note "]

On the arrival of a consul of the United States in Tripoli he is to deliver to Jussuf Bashaw Bey-

twelve thousand Spanish dollars
five hawsers-8 Inch
three cables-10 Inch
twenty five barrels tar
twenty five dÂ° pitch
ten dÂ° rosin
five hundred pine boards

*AFFIDAVIT OF ACKNOWLEDGEMENT- 1796 TREATY OF TRIPOLI*

five hundred oak dÂ°
ten masts (without any measure mentioned, suppose for vessels from 2 to 300 ton)
twelve yards
fifty bolts canvas
four anchors

And these when delivered are to be in full of all demands on his part or on that of his successors from the United States according as it is expressed in the tenth article of the following treaty. And no farther demand of tributes, presents or payments shall ever be made.

Translated from the Arabic on the opposite page, which is signed & sealed by Hassan Bashaw Dey of Algiers-the 4th day of Argib 1211-or the 3d day of Jane 1797-by-

Joel BARLOW

## [Approval of Humphreys]

To all to whom these Presents shall come or be made known.

Whereas the Underwritten David Humphreys hath been duly appointed Commissioner Plenipotentiary by Letters Patent, under the Signature of the President and Seal of the United States of America, dated the 30th of March 1795, for negotiating and concluding a Treaty of Peace with the Most Illustrious the Bashaw, Lords and Governors of the City & Kingdom of Tripoli; whereas by a Writing under his Hand and Seal dated the 10th of February 1796, he did (in conformity to the authority committed to me therefor) constitute and appoint Joel Barlow and Joseph Donaldson Junior Agents jointly and separately in the business aforesaid; whereas the annexed Treaty of Peace and Friendship was agreed upon, signed and sealed at Tripoli of Barbary on the 4th Of November 1796, in virtue of the Powers aforesaid and guaranteed by the Most potent Dey and Regency of Algiers; and whereas the same was certified at Algiers on the 3d of January 1797, with the Signature and Seal of Hassan Bashaw Dey, and of Joel Barlow one of the Agents aforesaid, in the absence of the other.

Now Know ye, that I David Humphreys Commissioner Plenipotentiary aforesaid, do approve and conclude the said Treaty, and every article and clause therein contained, reserving the same nevertheless for the final Ratification of the President of the United States of America, by and with the advice and consent of the Senate of the said United States.

In testimony whereof I have signed the same with my Name and Seal, at the City of Lisbon this 10th of February 1797.

[Seal] DAVID HUMPHREYS.

Source:
Treaties and Other International Acts of the United States of America.
Edited by Hunter Miller
Volume 2. Documents 1-40 : 1776-1818.
Washington DC. : Government Printing Office, 1931.

# Exhibit N
# 2:21 cv-11888-SJM-APP

*Special*

## AFFIDAVIT OF ACCEPTANCE and ACKNOWLEDGEMENT

**I DECLARE** that the online collection of the Library of Congress contains a publication entitled the *1880 Treaty of Madrid*, and that the attached photocopies are a true representation from that work, and in the possession of _houston, lasean dejong, *Moor grantee/beneficiary*,_ RECOVEYED, and GRANTED, on special deposit to the SEAN HOUSTON-*EL* FOUNDATION TRUST as trust res for the benefit of its beneficiaries.

**Further Affiant Sayeth Naught**

Performed in proper person, in his own right, who has attained the Age of Majority with *manifest special intent and purpose,* freewill act and Deed:

**I DECLARE,** under penalty of perjury under the laws of michigan and the united states of america that the foregoing is true and correct.   Executed: _____ 4ᵗʰ September, 20 21_____.

By: ___houston, lasean dejong___
**houston, lasean dejong,** *grantee/grantor/heir/beneficiary*
a private Moor americas aboriginal illinoisan national,
*"but not citizen of the united states for the district of columbia,*
*nor citizen of the united states of america in congress assembled."*
**SPECIAL DEPOSIT, PRIVATE, PRIORITY**

*locus sigilli* **(seal)**

I am over the age of 18 and not party to the transaction regarding the papers mailed.

nesbitt, daviL darnell
**Print**

nesbitt, dvl darell
**Witness**

lawson, tryone badson Jr.
**Print**

law, ting pots ji
**Witness**

*locus sigilli* (seal)

*locus sigilli* (seal)

Rf 125594809 48 .702 Trust



**LIBRARY**

LIBRARY OF CONGRESS

Office of Business Enterprises
Duplication Services Section

THIS IS TO CERTIFY that the online collections of the Library of Congress contain a publication entitled TREATIES AND OTHER INTERNATIONAL AGREEMENTS OF THE UNITED STATES OF AMERICA 1776-1949 and that the attached photocopies from Volume 1 —the title page, two preface pages and pages 71-79 on which appears, *Right of Protection in Morocco. Convention signed at Madrid July 3, 1880* -are a true representation from that work.

IN WITNESS WHEREOF, the seal of the Library of Congress is affixed hereto on November 25, 2019.

Rosalina Delgado-Jones
Assistant Business Enterprises Officer
Office of Business Enterprises
Library of Congress

101 Independence Avenue, SE Washington, DC 20540—4917 Tel 202.707.5650 www.loc.gov,
duplicationservices@loc.gov

# TREATIES AND OTHER INTERNATIONAL AGREEMENTS OF THE UNITED STATES OF AMERICA 1776–1949

Compiled under the direction of

## CHARLES I. BEVANS, LL.B.

*Assistant Legal Adviser, Department of State*

Volume 1

## MULTILATERAL

1776–1917

# PREFACE

The present compilation is designed to present in a convenient form the English texts or, in cases where no English text was signed, the official United States Government translations of treaties and other international agreements entered into by the United States from 1776 to 1950.

For several years the Department of State has been aware of the need for a consolidation of the texts of treaties and other international agreements of the United States. The establishment of the statutory volumes *United States Treaties and Other International Agreements* (UST) by an Act of Congress of September 23, 1950, effected this consolidation with respect to instruments brought into force after January 1, 1950, the date from which UST begins. Nearly two-thirds of the total number of treaties and agreements entered into by the United States between 1776 and 1968 have been concluded since 1949 and are therefore included in that publication.

Existing official compilations of the earlier treaties and agreements—those that antedate the UST volumes—do not meet the needs of either the United States Government or the American public. In the United States Statutes at Large, where the texts were officially published up to 1950, they are printed in 60 different bindings.

It has been nearly 60 years since the compilation known as the "Malloy" series began to come off the press and over 30 years since the fourth and last volume was published. The full title of that compilation, prepared under the direction of the Committee on Foreign Relations of the United States Senate, is *Treaties, Conventions, International Acts, Protocols, and Agreements Between the United States and Other Powers.* The first two volumes (1776–1909) were compiled by William M. Malloy, the third (1910–1923) by C. F. Redmond, and the fourth (1923–1937) by Edward J. Trenwith.

The only other significant official compilation of texts of United States treaties and agreements is one entitled *Treaties and Other International Acts of the United States of America,* edited by Hunter Miller. It consists of eight volumes (volume 1 is a short print) and carries only to the end of 1863. No further volumes of that publication are contemplated.

This new compilation will be approximately four times the length of the "Malloy" series. There are two principal reasons for the great increase in size: first, the large number of treaties and other international agreements entered into by the United States in the period between 1937 and 1950, many of which were extensive arrangements setting up the worldwide activities of the United Nations and its specialized agencies; and second, the inclusion in the new volumes of postal arrangements, agreements printed in the Execu-

iii

iv                                    PREFACE

tive Agreement Series, and certain other agreements not printed in the "Malloy" series.

The present series begins with several volumes of multilateral treaties and other agreements, arranged chronologically according to date of signature, to be followed by approximately 11 volumes of bilateral treaties and other agreements grouped under the names of the countries with which they were concluded. Each volume will have a relatively brief index. Cumulative analytical indexes of the texts of both multilateral and bilateral treaties and other agreements are planned.

Although this compilation contains headnotes and annotations covering all significant U.S. actions, it remains essentially a collection of texts. For current information regarding the status of the agreements printed herein, the reader will find it helpful to consult the publication *Treaties in Force*, which is issued by the Department of State under the date January 1 each year, and the *Department of State Bulletin*, which reports current actions week by week.

The merit of this work rests upon the comprehensive records maintained by the Treaty Staff and upon the labor of many devoted civil servants who have carefully surveyed the available records, collected the documents, added the annotations, and performed the essential editorial functions. It is, in every sense of the word, a cooperative product, and it has been made possible by the understanding and generous support of the Legal Adviser of the Department, Leonard C. Meeker.

Those of the Treaty Staff who have contributed especially in the preparation of this publication up to the time the first volume goes to press are Helen J. Zilch, who compiled much of the manuscript, Eunice W. Shafferman, who established editorial standards for the series and completed the first volume, her coworker and successor Madeline S. Patton, who has continued the compilation, Adeline D. Bencsik, who has begun work on the bilateral agreements, and Eleanor C. McDowell and William V. Whittington, who have resolved many difficult questions on texts and annotations.

Jerome H. Perlmutter, Chief of the Division of Publishing and Reproduction Services, and Dorothy M. Hine and Anne Katherine Pond of his Editorial Section, have contributed exceptional managerial and publishing skill in bringing this publication to a reality.

To all those named and to others who have contributed to this compilation or will be doing so in completing it, I express my sincere appreciation. I am confident that all will feel rewarded for their efforts by the continuing usefulness and convenience of this publication.

CHARLES I. BEVANS
*Assistant Legal Adviser*
*Department of State*

WASHINGTON, D.C.
*July 31, 1968*

# RIGHT OF PROTECTION IN MOROCCO

*Convention signed at Madrid July 3, 1880*
*Effective from July 3, 1880*
*Ratifications exchanged at Tangier May 1, 1881*
*Senate advice and consent to ratification May 5, 1881*
*Ratified by the President of the United States May 10, 1881*
*Proclaimed by the President of the United States December 21, 1881*
*Ratification of the United States deposited at Tangier March 9, 1882*
*Amendment, implementation, and termination in part: Provisions of*
*the General Act of Algeciras of April 7, 1906,[2] prevail over any*
*conflicting provisions; article 11 implemented by article 60 of*
*the General Act; extraterritorial jurisdiction in Morocco relin-*
*quished by the United States October 6, 1956;[1] article 15 relating*
*to Moroccan nationality obsolete and without effect[3]*

22 Stat. 817; Treaty Series 246

[TRANSLATION]

His Excellency the President of the United States of America; His Majesty the Emperor of Germany, King of Prussia; His Majesty the Emperor of Austria, King of Hungary; His Majesty the King of the Belgians; His Majesty the King of Denmark; His Majesty the King of Spain; His Excellency the President of the French Republic; Her Majesty the Queen of the United Kingdom of Great Britain and Ireland; His Majesty the King of Italy; His Majesty the Sultan of Morocco; His Majesty the King of the Netherlands; His Majesty the King of Portugal and the Algarves; His Majesty the King of Sweden and Norway;

Having recognized the necessity of establishing, on fixed and uniform bases, the exercise of the right of protection in Morocco, and of settling certain questions connected therewith, have appointed as their plenipotentiaries at the conference assembled for that purpose at Madrid, to wit:

His Excellency the President of the United States of America, General Lucius Fairchild, Envoy Extraordinary and Minister Plenipotentiary of the United States near His Catholic Majesty;

---

[1] TS 456, post, p. 464; see art. 123 of the General Act.
[2] *Department of State Bulletin*, Nov. 26, 1956, p. 844.
[3] See footnote 9, p. 77.

71

72     MULTILATERAL AGREEMENTS, 1776–1917

His Majesty the Emperor of Germany, King of Prussia, Count Eberhardt de Solms-Sonnewalde, Knight Commander of the first class of his Order of the Red Eagle with oak leaves, Knight of the Iron Cross, etc., etc., his Envoy Extraordinary and Minister Plenipotentiary near His Catholic Majesty;

His Majesty the Emperor of Austria, King of Hungary, Count Emanuel Ludolf, his Privy Councillor in actual service, Grand Cross of the Imperial Order of Leopold, Knight of the first class of the Order of the Iron Crown, etc., etc., his Envoy Extraordinary and Minister Plenipotentiary near His Catholic Majesty;

His Majesty the King of the Belgians, Mr. Edward Anspach, Officer of his Order of Leopold, etc., etc., his Envoy Extraordinary and Minister Plenipotentiary near His Catholic Majesty;

His Majesty the King of Spain, Don Antonio Cánovas del Castillo, Knight of the distinguished Order of the Golden Fleece, etc., etc., President of his Council of Ministers;

His Excellency the President of the French Republic, Vice-Admiral Jaurès, Senator, Knight Commander of the Legion of Honor, etc., etc., Ambassador of the French Republic near His Catholic Majesty;

Her Majesty the Queen of the United Kingdom of Great Britain and Ireland, the Honorable Lionel Sackville Sackville West, her Envoy Extraordinary and Minister Plenipotentiary near His Catholic Majesty who is likewise authorized to represent His Majesty the King of Denmark;

His Majesty the King of Italy, Count Joseph Greppi, Grand Officer of the Order of Saint Maurice and Saint Lazarus, of that of the Crown of Italy, etc., etc., his Envoy Extraordinary and Minister Plenipotentiary near His Catholic Majesty;

His Majesty the Sultan of Morocco, the Taleb Sid Mohammed Vargas, his Minister of Foreign Affairs and Ambassador Extraordinary;

His Majesty the King of the Netherlands, Jonkheer Maurice de Heldewier, Commander of the Royal Order of the Lion of the Netherlands, Knight of the Order of the Oaken Crown of Luxemburg, etc., etc., his Minister Resident near His Catholic Majesty;

His Majesty the King of Portugal and the Algarves, Count de Casal Ribeiro, Peer of the Realm, Grand Cross of the Order of Christ, etc., etc., his Envoy Extraordinary and Minister Plenipotentiary near His Catholic Majesty;

His Majesty the King of Sweden and Norway, Mr. Henry Åkerman, Knight Commander of the first class of the Order of Wasa, etc., etc., his Minister Resident near His Catholic Majesty;

RIGHT OF PROTECTION IN MOROCCO—JULY 3, 1880     73

Who, in virtue of their full powers, recognized as being in good and due form, have agreed upon the following articles:

### ARTICLE 1 [*]

The conditions under which protection may be conceded are those established in the British and Spanish treaties with the Government of Morocco, and in the convention made between that Government, France and other powers in 1863, with the modifications introduced by the present convention.

### ART. 2

Foreign Representatives at the head of a Legation may select their interpreters and employees from among the subjects of Morocco or others.

These protected persons shall be subject to no duty, impost or tax whatever, other than those stipulated in articles 12 and 13.

### ART. 3

Consuls, Vice consuls or Consular Agents having charge of a post, and residing within the territory of the Sultan of Morocco, shall be allowed to select but one interpreter, one soldier and two servants from among the subjects of the Sultan, unless they may require a native secretary.

These protected persons shall, in like manner, be subject to no duty, impost or tax whatever, other than those stipulated in articles 12 and 13.

### ART. 4

If a Representative shall appoint a subject of the Sultan to the office of Consular Agent in a town on the coast, such agent shall be respected and honored, as shall the members of his family occupying the same dwelling with him, and they, like him shall be subject to no duty, impost or tax whatever, other than those stipulated in articles 12 and 13; but he shall not have the right to protect any subject of the Sultan other than the members of his own family.

---

[*] A U.S. note of Feb. 13, 1914, addressed to the French Ambassador at Washington, stated in part:

"The provisions of the convention of 1863 appear to be substantially the same as the 'regulations relative to protection adopted by common consent by the Legation of France and the Government of Morocco, August 19, 1963,' reprinted in 'Treaties in Force, 1904,' at the end of the Madrid convention. . . . The British and Spanish treaties mentioned in Article I of the Madrid convention are presumably the general treaty of December 9, 1856, between Great Britain and Morocco, and the treaty of commerce and navigation of November 20, 1861, between Spain and Morocco." (1914 For. Rel. 909.) For background, see II Hackworth 554.

For text of the 1863 regulations, see p. 78; for the general treaty of Dec. 9, 1856, between Great Britain and Morocco, see *British and Foreign State Papers*, vol. 46, p. 176; for the treaty of commerce and navigation of Nov. 20, 1861, between Spain and Morocco, see *ibid.*,

He may, however, for the exercise of his functions, have a protected soldier

Officers in acting charge of Vice Consulates being subjects of the Sultan, shall, during the exercise of their functions, enjoy the same rights as Consular Agents who are subjects of the Sultan.

### ART. 5

The Government of Morocco recognizes the right of Ministers Chargés d'Affaires and other Representatives, which is granted to them by treaties, to select the persons whom they employ, either in their own service or that of their governments, unless such persons shall be sheiks or other employees of the Government of Morocco, such as soldiers of the line or of the cavalry, in addition to the Maghaznias in command of their guard. In like manner they shall not be permitted to employ any subject of Morocco who is under prosecution.

It is understood that civil suits commenced before protection, shall be terminated before the courts which have instituted such proceedings. The execution of the sentence shall suffer no hindrance. Nevertheless, the local authorities of Morocco shall take care to communicate, without delay, the sentence pronounced, to the Legation, Consulate or Consular Agency upon which the protected person is dependent.

As to those persons formerly protected, who may have a suit which was commenced before protection was withdrawn from them, their case shall be tried by the court before which it was brought.

The right of protection shall not be exercised towards persons under prosecution for an offense or crime, before they have been tried by the authorities of the country, or before their sentence, if any has been pronounced, has been executed.

### ART. 6

Protection shall extend to the family of the person protected. His dwelling shall be respected.

It is understood that the family is to consist only of the wife, the children, and the minor relatives dwelling under the same roof.

Protection shall not be hereditary. A single exception, which was established by the convention of 1863, but which is not to create a precedent, shall be maintained in favor of the Benchimol family.

Nevertheless, if the Sultan of Morocco shall grant another exception, each of the contracting powers shall be entitled to claim a similar concession.

### ART. 7

Foreign representatives shall inform the Sultan's Minister of Foreign Affairs, in writing, of any selections of an employee made by them.

They shall furnish annually to the said Minister a list of the names of the persons protected by them or by their Agents throughout the States of the Sultan of Morocco.

This list shall be transmitted to the local authorities, who shall consider as persons enjoying protection only those whose names are contained therein.

### ART. 8

Consular officers shall transmit each year to the authorities of the district in which they reside a list, bearing their seal, of the persons protected by them. These authorities shall transmit it to the Minister of Foreign Affairs, to the end that, if it be not conformable to the regulations, the Representatives at Tangier may be informed of the fact.

A consular officer shall be required to give immediate information of any changes that may have taken place among the persons protected by his Consulate.

### ART. 9

Servants, farmers and other native employees of native secretaries and interpreters shall not enjoy protection. The same shall be the case with Moorish employees or servants of foreign subjects.

Nevertheless, the local authorities shall not arrest an employee or servant of a native officer in the service of a Legation or Consulate, or of a foreign subject or protected person, without having notified the authority upon which he is dependent.

If a subject of Morocco in the service of a foreign subject shall kill or wound any person, or violate his domicile, he shall be arrested immediately, but the diplomatic or consular authority under which he is shall be notified without delay.

### ART. 10

Nothing is changed with regard to the situation of brokers, as established by the treaties and by the convention of 1863, except what is stipulated, relative to taxes, in the following articles.

### ART. 11 *

The right to hold property is recognized in Morocco as belonging to all foreigners.

The purchase of property must take place with the previous consent of the Government, and the title of such property shall be subject to the forms prescribed by the laws of the country.

---

* Implemented by art. 60 of General Act of Algeciras of Apr. 7, 1906 (TS 456), post, p. 479.

Case 2:21-cv-11888-SJM-APP ECF No. 5, PageID.469 Filed 09/07/21 Page 93 of 100

Any question that may arise concerning this right shall be decided according to the same laws, with the privilege of appeal to the Minister of Foreign Affairs stipulated in the treaties.

### ART. 12 [*]

Foreigners and protected persons who are the owners or tenants of cultivated land, as well as brokers engaged in agriculture, shall pay the agricultural tax. They shall send to their Consul annually, an exact statement of what they possess delivering into his hands the amount of the tax.

He who shall make a false statement, shall be fined double the amount of the tax that he would regularly have been obliged to pay for the property not declared. In case of repeated offense this fine shall be doubled.

The nature, method, date and apportionment of this tax shall form the subject of a special regulation between the Representatives of the Powers and the Minister of Foreign Affairs of His Shereefian Majesty.

### ART. 13 [†]

Foreigners, protected persons and brokers owning beasts of burden shall pay what is called the gate-tax. The apportionment and the manner of collecting this tax which is paid alike by foreigners and natives, shall likewise form the subject of a special regulation between the Representatives of the Powers and the Minister of Foreign Affairs of His Shereefian Majesty.

The said tax shall not be increased without a new agreement with the Representatives of the Powers.

### ART. 14

The mediation of interpreters, native secretaries or soldiers of the different Legations or Consulates, when persons are concerned who are not [‡] under the protection of the Legation or Consulate, shall be permitted only when they are the bearers of a document signed by the head of a mission or by the consular authority.

---

[*] Regulations in execution of art. 12 were signed at Tangier Mar. 30, 1881 (Great Britain, *Command Papers*, 1882, C. 3163; *British and Foreign State Papers*, vol. 72, p. 636 (French)).

[†] Regulations in execution of art. 13 were signed at Tangier Mar. 30, 1881 (Great Britain, *Command Papers*, 1882, C. 3163; *British and Foreign State Papers*, vol. 72, p. 636 (French)), and on June 2, 1896 (Gustav Roloff, *Das Staatsarchiv*, vol. LXIV, p. 337 (French)).

[‡] The word "not" was omitted in the translation of the convention as it was printed in 22 Stat. 823. A memorandum in the files of the Department of State dated Apr. 28, 1883, takes note of the error in the English translation and directs that the correction be made in the "pamphlet copy" of the convention.

Case 2:21-cv-11888-SJM-APP  ECF No. 5, PageID.470  Filed 09/07/21  Page 94 of 100

### Art. 15 *

Any subject of Morocco who has been naturalized in a foreign country, and who shall return to Morocco, shall after having remained for a length of time equal to that which shall have been regularly necessary for him to obtain such naturalization, choose between entire submission to the laws of the Empire and the obligation to quit Morocco, unless it shall be proved that his naturalization in a foreign country was obtained with the consent of the Government of Morocco.

Foreign naturalization heretofore acquired by subjects of Morocco according to the rules established by the laws of each country, shall be continued to them as regards all its effects, without any restriction.

### Art. 16

No irregular or unofficial protection shall be granted in future. The authorities of Morocco will recognize no protection, of any kind whatever, save such as is expressly provided for in this convention.

Nevertheless, the exercise of the customary right of protection shall be reserved for those cases only in which it may be desired to reward signal services rendered by a native of Morocco to a foreign power, or for other altogether exceptional reasons.

The Minister of Foreign Affairs at Tangier shall be previously informed of the nature of the services, and notified of the intention to reward them, in order that he may, if need be, present his observations thereon; yet the final decision shall be reserved for the Government to which the service shall have been rendered.

The number of persons thus protected shall not exceed twelve for each power, and this number is fixed as the maximum unless the consent of the Sultan shall be obtained.

The status of persons who have obtained protection in virtue of the custom which is henceforth to be regulated by this stipulation shall be without limitation of the number of persons belonging to this class and now so protected, the same for themselves and their families as that which is established for other protected persons.

---

* A U.S. note of Mar 17, 1959, addressed to the Moroccan Ministry of Foreign Affairs, referred to a note from the Ministry dated Oct. 8, 1958, in which the Embassy had been informed that the Moroccan Government had decided to strike all prescriptions relating to Moroccan nationality from the text of the Madrid convention. The U.S. note said, in part:

"The Government of the United States of America, having unilaterally relinquished certain rights in Morocco with the reemergence of Morocco into independence in 1956, considers that in line with historical developments Article XV of the Madrid Convention on Protection of 1880 has become obsolete and without effect.

"The Government of the United States takes due cognizance, therefore, of the action taken by the Moroccan Government as set forth in its above cited Note, which the United States Government understands to refer only to Article XV of the Madrid Convention on Protection of 1880."

78 MULTILATERAL AGREEMENTS, 1776–1917

### Art. 17

The right to the treatment of the most favored nation is recognized by Morocco as belonging to all the powers represented at the Madrid conference.

### Art. 18

This convention shall be ratified. The ratifications shall be exchanged at Tangier with as little delay as possible.

By exceptional consent of the high contracting parties the stipulations of this convention shall take effect on the day on which it is signed at Madrid.

In faith whereof the respective plenipotentiaries have signed this convention, and have thereunto affixed the seals of their arms.

Done at Madrid, in thirteen originals, this third day of July, one thousand eight hundred and eighty.

[For the United States:]
  LUCIUS FAIRCHILD [SEAL]

[For Germany:]
  E. DE SOLMS [SEAL]

[For Austria-Hungary:]
  E. LUDOLF [SEAL]

[For Belgium:]
  ANSPACH [SEAL]

[For Spain:]
  A. CÁNOVAS DEL CASTILLO [SEAL]

[For France:]
  JAURÈS [SEAL]

[For the United Kindom and for Denmark:]
  L. S. SACKVILLE WEST [SEAL]

[For Italy:]
  J. GREPPI [SEAL]

[For Morocco:]
  MOHAMMED VARGAS [signature in arabic] [SEAL]

[For the Netherlands:]
  HELDEWIER [SEAL]

[For Portugal:]
  CASAL RIBEIRO [SEAL]

[For Sweden and Norway:]
  AKERMAN [SEAL]

[TRANSLATION]

REGULATIONS RELATIVE TO PROTECTION ADOPTED BY COMMON CONSENT BY THE LEGATION OF FRANCE AND THE GOVERNMENT OF MOROCCO, AUGUST 19, 1863 [30]

Protection is individual and temporary.

It consequently does not in general apply to the relatives of the person protected.

It may apply to his family, that is to say, to his wife and children living under the same roof. It lasts at the longest for a person's lifetime and is never hereditary, with the single exception of the Benchimol family, which has furnished for several generations and still furnishes persons who act in the capacity of Brokers and interpreters for the post at Tangier.

Protected persons are divided into two classes.

The first class comprises natives employed by the Legation and by the various French consular officers.

---

[30] I Malloy 1226. For background on acceptance prior to the Madrid convention of regulations relative to protection, see G. Fr. de Martens, *Nouveau recueil général de traités* (2d series), vol. VI, p. 525.

# RIGHT OF PROTECTION IN MOROCCO—JULY 3, 1880

The second class consists of native factors, brokers, or agents, employed by French merchants for their business affairs. It is proper here to refer to the fact that the term merchant is only applied to a person carrying on the import or export trade on a large scale, either in his own name or as the agent of others.

The number of native brokers enjoying French protection is limited to two for each commercial house.

By way of exception commercial firms having establishments in different ports may have two brokers attached to each of these establishments, who may as such enjoy French protection.

French protection is not extended to natives employed by French citizens in agricultural occupations.

Nevertheless, in consideration of the existing state of things, and by agreement with the authorities of Morocco, the benefit of the protection which has hitherto been granted to the persons referred to in the foregoing paragraph shall be extended to the said persons for two months from the first of September next.

It is, moreover, understood that agricultural laborers, herdsmen, or other native peasants, in the service of French citizens shall not be legally prosecuted without immediate information thereof being communicated to the competent consular officer, in order that the latter may protect the interests of his countrymen.

The list of all protected persons shall be delivered by the proper consulate to the competent magistrate of the place, who shall likewise be informed of any changes that may subsequently be made in the said list.

Each protected person shall be furnished with a card in French and in Arabic, mentioning his name and stating the services which secure this privilege to him.

All these cards shall be issued by the Legation of France at Tangier.

TANGIER, *Aug. 19, 1863.*

# Exhibit T

# 2:21 cv-11888-SJM-APP

Special

## AFFIDAVIT of ACCEPTANCE and ACKNOWLEDGEMENT

**I DECLARE** that the online collection of the Library of Congress contains a publication entitled the **1939 FOREIGN RELATIONS U.S. DIPLOMATIC PAPERS**, and that the attached photocopies from **Volume IV--the binding cover page, the title page, copy page, and page 631-693** are true representation from that work, and in the possession of  houston, lasean dejong, *Moor grantee/beneficiary*,  RECOVEYED, and GRANTED, on special deposit to the SEAN HOUSTON-*EL* FOUNDATION TRUST as trust res for the benefit of its beneficiaries.

**Further Affiant Sayeth Naught**

Performed in proper person, in his own right, who has attained the Age of Majority with *manifest special intent and purpose,* freewill act and Deed:

*I DECLARE,* under penalty of perjury under the laws of michigan and the united states of america that the foregoing is true and correct.  Executed: _____ *4th September* ,20 *21* .

By: _____ *houston, lasean dejong* _____
**houston, lasean dejong,** *grantee/grantor/heir/beneficiary*
a private Moor americas aboriginal illinoisan national,
*"but not citizen of the united states for the district of columbia,*
*nor citizen of the united states of america in congress assembled."*
**SPECIAL DEPOSIT, PRIVATE, PRIORITY**

*locus sigilli* (seal)

I am over the age of 18 and not party to the transaction regarding the papers mailed.

nesbitt, david darnell
**Print**

nesbitt, david darnell
**Witness**

lawson, tryone batson Jr
**Print**

law, ty bats jr.
**Witness**

*locus sigilli* (seal)

*locus sigilli* (seal)

KF1255949090S.702 Trust



**LIBRARY**

Office of Business Enterprises
Duplication Services Section

THIS IS TO CERTIFY that the collections of the Library of Congress contain a publication entitled FOREIGN RELATIONS OF THE UNITED STATES DIPLOMATIC PAPERS (1939), and that the attached photocopies from Volume IV — the binding cover page, the title page, copyright page, and pages 631-693 — are a true representation from that work.

THIS IS TO CERTIFY FURTHER, that the spine label bears a sticker with the Library of Congress Call Number "KZ 233.U55 set 3" and the same is penciled inside. Furthermore the copyright page bears a stamp that reads, "4 Jun 30 Copy 3 1955."

IN WITNESS WHEREOF, the seal of the Library of Congress is affixed hereto on November 18, 2019.

...nses Officer
...ises

