UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LASEAN DEJONG HOUSTON,

    Plaintiff,

v.

LASEAN DEJONG HOUSTON, et al.,

    Defendants.

                               /

Case No. 2:21-cv-11888

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER
SUA SPONTE DISMISSING THE CASE
AND DENYING PLAINTIFF'S REQUEST TO SEAL THE PLEADINGS**

Plaintiff filed a pro se complaint against more than two dozen Defendants. ECF 1. After reviewing the complaint, the Court has determined that there is no subject matter jurisdiction and will therefore dismiss the complaint sua sponte. The Court will also deny Plaintiff's request to seal the pleadings.

**BACKGROUND**

Plaintiff sued his own estate and a host of private individuals and public officials. ECF 1. Among the public officials are: the Attorneys General of the United States, Michigan, and Illinois; the Secretaries of State for the United States and Michigan; the Governors of Michigan and Illinois; the Secretaries of Treasury, Interior, and Homeland Security for the United States; a United States Army General; the Director of the Illinois Department of Children and Family Services; and a supervisor at Lutheran Social Services of Illinois. *Id*. at 18–19.

1

The meandering complaint contained several causes of action. Plaintiff first requested that the Court issue a declaratory judgment that Plaintiff is "a private Moor, [A]mericas aboriginal [I]llinoisan national, and subject of the Al Maroc Shereefian Empire, but not a citizen of the [U]nited [S]tates for the [D]istrict of [C]olumbia, nor a citizen of the [U]nited [S]tates of [A]merica in [C]ongress assembled." *Id.* at 23–24 (internal quotations and italics omitted). Second, Plaintiff requested that the Court terminate "any guardian [or] ward relation" and return an estate to Plaintiff. *Id.* at 25–27. Third, Plaintiff sought "relief against all liability of the Estate as the implied equitable surety or secondary liability imposed upon him in all legal proceedings of a general military character, and in a particular State legal proceeding." *Id.* at 27–28 (internal quotations omitted). Fourth, Plaintiff requested equitable relief related to "trespass upon your orator[']s inherent right to equal Justice being rendered toward[] him concerning any dispute" and "exoneration of all liability and obligations imputed to" Plaintiff by Defendants. *Id.* at 28. Fifth, Plaintiff claimed "[s]ubrogation of all rights, title[,] and interests of the [U]nited [S]tates of [A]merica, and the [U]nited [S]tates for the [D]istrict of [C]olumbia [] against the complainant with respect to any irrevocable obligation arising from a quasi-trust relationship conducted by the said [D]istrict of [C]olumbia military legal proceedings." *Id.* (internal italics omitted). Sixth, Plaintiff sought relief for destruction of "private fiduciary trust relations." *Id.* at 29–30. Seventh, Plaintiff wanted the Court to "restore[]" the estate of an individual that Plaintiff called an "infant" to Plaintiff along with the profits of the estate while Plaintiff was deprived

of the estate. *Id*. at 31–32, 38. Eighth, Plaintiff demanded an injunction to prevent Defendants from subjecting Plaintiff "under legal compulsion to any statutes, codes, ordinances, provisions, prohibitions, and penalties" while there was a presumption Plaintiff was a citizen of the United States, among similar requests. *Id*. at 32–34 (internal quotations and italics omitted). Ninth, Plaintiff asked the Court for an accounting of an estate and an extinguishment of state and local tax obligations on the estate. *Id*. at 38. Tenth, Plaintiff requested that the Department of the Interior give him 1,863 acres of land and that the land not be taxed. *Id*. at 38–39. Plaintiff also sought equitable estoppel against non bona fide parties and injunctive relief against Defendants so that they may not treat Plaintiff as an enemy under the Trading with the Enemy Act of 1933 and may not obtain certain forms of judgments against Plaintiff. *Id*. at 39–40. And last, Plaintiff requested a plethora of injunctive relief related to preventing Defendants from requiring Plaintiff to undergo compulsory medical treatment, vaccination, quarantine, and use of protective face masks. *Id*. at 40. The foregoing list is non-exhaustive but captures the essence of Plaintiff's numerous claims. In addition to the claims, Plaintiff also requested that the Court seal all documents filed in the pleadings. *Id*. at 42.

## LEGAL STANDARD

Federal courts have limited subject matter jurisdiction under the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under current statutory schema, federal courts have subject matter jurisdiction over two categories of cases: those that arise under federal law and those in which there is an amount in controversy over 75,000 dollars and the parties have

completely diverse citizenship. 28 U.S.C. §§ 1331, 1332(a); *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019).

Federal Rule of Civil Procedure 12(h)(3) requires that "[i]f [a] court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." In the Sixth Circuit, courts have "broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citation omitted). In general, a district court should "not sua sponte dismiss a complaint where the filing fee has been paid unless the court gives the plaintiff the opportunity to amend the complaint." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (italics omitted). But a district court may, "at any time, sua sponte dismiss a complaint for lack of subject matter jurisdiction" if "the allegations of [the] complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Id.* (italics omitted). Courts should also construe pro se complaints liberally and hold pro se plaintiffs to a less stringent standard than plaintiffs represented by counsel. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam).

## DISCUSSION

Plaintiff alleged six sources of subject matter jurisdiction: (1) the 1787 Treaty of Marakesh; (2) the 1824 Treaty of Tunis; (3) U.S. Const. Art. VI; (4) U.S. Const. Art. III, § 2, cl. 1; (5) the Judiciary Act of 1789; and (6) the Articles of Confederation, Art XII. *See* ECF 1, PgID 22–23, 28. Even after liberally construing Plaintiff's complaint and considering the preference for allowing a plaintiff an opportunity to amend a

4

complaint, the Court will still sua sponte dismiss the complaint for lack of subject matter jurisdiction. The Court cannot liberally construe the complaint to allege a cause of action within the Court's subject matter jurisdiction. While the Court suspects Plaintiff is attempting to assert federal-question jurisdiction when he referred to the above-listed sources, the Court will, in turn, analyze both whether there is federal-question jurisdiction or diversity jurisdiction before turning to the propriety of dismissing the case sua sponte. The Court will also discuss Plaintiff's request to seal the pleadings.

I. Federal-Question Jurisdiction

Under federal-question jurisdiction, "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal-question jurisdiction requires that the "cause of action aris[ing] under federal law must be apparent from the face of the 'well-pleaded complaint.'" *Miller v. Bruenger*, 949 F.3d 986, 990 (6th Cir. 2020) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)). In other words, "for purposes of assessing whether federal-question jurisdiction exists, federal courts ignore any potential federal defenses that may arise in the course of the litigation." *Id.* (citing *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003)). When declaratory judgment is sought, courts inquire into "whether, absent the availability of declaratory relief, the case could have [been] brought in federal court." *Id.* (alteration in original) (quoting 15A James Wm. Moore, et al., *Moore's Federal Practice – Civil* § 103.44 (2019)).

None of the six sources that Plaintiff cites for federal-question jurisdiction confer subject matter jurisdiction over the causes of action in the complaint. First, the 1787 Treaty of Marakesh is no longer in force. According to the United States Embassy in Morocco, while the 1787 Treaty of Marakesh was in fact ratified by the United States Congress in 1787, the treaty was only binding for fifty years. U.S. Embassy & Consulates in Morocco, *History of the U.S. and Morocco* (accessed Sept. 14, 2021), https://bit.ly/3tKjEDP [https://perma.cc/4P9M-YG7V]; *see also* The Avalon Project, *The Barbary Treaties 1786–1816: Treaty with Morocco June 28 and July 15, 1786* (Yale Law School 2008), https://bit.ly/3CiOlTr [https://perma.cc/F2WD-C7JJ] ("*1787 Treaty of Marakesh*") (reproducing, based on the dates of signing and ratification, the Treaty of Marakesh with the following provision: "[t]his Treaty shall continue in full Force, with the help of God for Fifty Years"). The 1836 Treaty of Morocco apparently replaced the 1787 Treaty of Marakesh after the Treaty of Marakesh expired. *See* U.S. Embassy & Consulates in Morocco, s*upra.* In fact, the United States Department of State does not list the 1787 Treaty of Marakesh as an active treaty, but the 1836 Treaty of Morocco is listed as a treaty currently in force. *See generally* United States Department of State, *A List of Treaties and Other International Agreements of the United States in Force on January 1, 2020* 311 (2020), https://bit.ly/3lxs3Xh [https://perma.cc/PE5X-832Z].

A treaty no longer in force cannot be considered a "treat[y] of the United States" under § 1331's federal-question jurisdiction. Treaties that do not create a judicially enforceable cause of action do not provide federal courts with subject matter

6

jurisdiction. *See Cooper Butt ex rel. Q.T.R. v. Barr,* 954 F.3d 901, 905 (6th Cir. 2020). A treaty that has been inactive for more than 180 years cannot create a judicially enforceable cause of action and therefore cannot provide the Court with subject matter jurisdiction. As a result, the 1787 Treaty of Marakesh does not provide the Court with federal-question jurisdiction to hear any of Plaintiff's claims.

The Court recognizes that the 1836 Treaty of Morocco did have similar provisions to the 1787 Treaty of Marakesh. *Compare* The Avalon Project, *The Barbary Treaties 1786–1816: Morocco – Treaty of Peace; September 16, 1836* (Yale Law School 2008), https://bit.ly/2XpZAu1 [https://perma.cc/Z7X4-UTH5] ("*1836 Treaty of Morocco*") *with 1787 Treaty of Marakesh*. But even if the Court liberally construes the complaint to refer to the 1836 Treaty of Morocco rather than the 1787 Treaty of Marakesh, the 1836 Treaty also fails to confer federal-question jurisdiction for any of Plaintiff's claims. A court in the District of New Jersey faced with similar claims found that the Barbary Treaties—which include the 1787 Treaty of Marakesh and by extension the vastly similar 1836 Treaty of Morocco—do not provide federal-question jurisdiction to federal courts for such claims. *See El Ameen Bey v. Stumpf,* 825 F. Supp. 2d 537, 545, 557–59 (D.N.J. 2011).[1] The Barbary Treaties aimed to "eliminate, or at least curtail, the ill of piracy plaguing the coastal waters and ports of the post-medieval North African geopolitical bodies; and [] eliminate, or at least halt the rise of, the fees charged by the rulers of these geo-political bodies to the then-developing

---

[1] The Barbary Treaties were "between the United States and semi-autonomous North African city-states of Algiers, Tunis, and Tripoli, and the Sultanate of Morocco" in the early 19th century. *El Ameen Bey*, 825 F. Supp. 2d at 558 n.10.

7

American merchantry for keeping 'peace' in the ports and coastal waters subject to their dominion." *Id.* at 545 (quoting *Marakush Caliphate of Amexem, Inc. v. New Jersey*, 790 F. Supp. 2d 241, 269 (D.N.J. 2011)). After reviewing the 1836 Treaty of Morocco, the Court agrees that nearly all the provisions deal with maritime or merchant issues and observes that the other provisions appear confined to events occurring in Morocco. *See 1836 Treaty of Morocco*. Because Plaintiff's claims have nothing to do with maritime or merchant issues near Morocco, Plaintiff cannot rely on the 1836 Treaty of Morocco for subject matter jurisdiction. *See El Ameen Bey*, 825 F. Supp. 2d at 558 ("[A] litigant's reliance on any Barbary Treaty . . . for the purposes of a civil suit raising claims based on the events that occurred within what is the United States' geographical territory is facially frivolous.").

As for the 1824 Treaty of Tunis, the United States Department of State does not list the treaty as in force. *See generally* United States Department of State, *supra*. Still, the 1824 Treaty of Tunis is another of the Barbary Treaties, an amendment to an earlier treaty from the 1790s. *See* The Avalon Project, *The Barbary Treaties 1786–1816: Tunis – Convention of February 24, 1824 Amending the Treaty of August 1797, and March 26, 1799* (Yale Law School 2008), https://bit.ly/39aHkb1 [https://perma.cc/7FDX-M37G]. A review of the 1824 document reveals that—like the 1836 Treaty of Morocco and many of the Barbary Treaties—most provisions deal with maritime or merchant issues. *Id*. The provisions that do not deal with maritime or merchant issues appear to only apply to Tunisians. *Id*. Plaintiff does not allege that he is Tunisian. *See generally* ECF 1. Because Plaintiff's claims have nothing to do

with maritime or merchant issues near Tunisia and Plaintiff does not allege that he is Tunisian, Plaintiff cannot rely on the 1824 Treaty of Tunis for subject matter jurisdiction. *See El Ameen Bey*, 825 F. Supp. 2d at 558.

What is more, courts in the Eastern District of Michigan have routinely dismissed complaints that cite the Barbary Treaties for subject matter jurisdiction as frivolous, and the Court is unaware of a plaintiff who has proceeded under the subject matter jurisdiction of the Barbary Treaties. *See Grayson-Bey v. Hutchinson*, No. 2:20-cv-10487, 2020 WL 1047730, at *2 (E.D. Mich. Mar. 4, 2020) (Murphy, J.); *Erwin El v. Genesee Cnty. Land Bank Auth.*, No. 2:19-cv-11522, 2019 WL 2763314, at *1 (E.D. Mich. July 2, 2019) (Michelson, J.).

Next, Article VI of the Constitution does not confer subject matter jurisdiction for any of Plaintiff's claims. The First Clause of Article VI relates to whether debts entered into before the Constitution's ratification were valid against the United States. The complaint has no allegations concerning debts that preceded the Constitution, so the Clause cannot confer federal-question jurisdiction for the complaint. *See generally* ECF 1. The Second Clause is the Supremacy Clause, which has to do with the place of federal and state law under the Constitution. The complaint never alleged conflicts between federal and state law, so the Supremacy Clause cannot confer federal-question jurisdiction for the complaint. *See generally id.* And the Third Clause deals with an oath of office for federal officials. The complaint has nothing to do with an oath of office for federal officials and, as a result, the Clause cannot confer federal-question jurisdiction. *See generally id.*

9

Plaintiff's reliance on Article III for subject matter jurisdiction also fails. Article III, Section Two, Clause One authorizes federal courts to have federal-question jurisdiction and diversity jurisdiction. But the Clause, standing alone, cannot provide jurisdiction to federal courts because "[j]urisdiction of the lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701–02 (1982). Plaintiff did cite the Judiciary Act of 1789. While it is unclear precisely what part of the Act Plaintiff was trying to cite, the Court will liberally construe Plaintiff as trying to cite the statutory grants of jurisdiction that are now codified as 28 U.S.C. §§ 1331 and 1332(a). Still, simply citing the statutory grants of subject matter jurisdiction does not provide a district court with such jurisdiction unless the requirements of the statutes are met.

Finally, Plaintiff cannot rely on the Articles of Confederation for subject matter jurisdiction. The Articles of Confederation, the first constitution of the United States, were abandoned during the Constitutional Convention. *Wesberry v. Sanders*, 376 U.S. 1, 10 (1964) ("Soon after the Convention assembled, Edmund Randolph of Virginia presented a plan not merely to amend the Articles of Confederation but to create an entirely new National Government with a National Executive" in order to "create[e] a new and closer form of government than was possible under the Confederation."). Put simply, a prior constitutional order cannot confer subject matter jurisdiction in a new constitutional order.

10

Beyond the sources of federal-question jurisdiction raised by Plaintiff, there are likely no sources of federal-question jurisdiction available to Plaintiff for most of the claims in the complaint given the frivolous nature of the claims. For example, no provision of the Constitution or federal law gives the Court authority to determine that Plaintiff is a sovereign citizen and thus free of compulsion under federal or state statutes and ordinances. And the Court believes that most of Plaintiff's claims having to do with guardian relationships or estates, while still frivolous, are within the realm of probate law. *Probate*, Black's Law Dictionary (11th ed. 2019) ("The judicial procedure by which a testamentary document is established to be a valid will; the proving of a will to the satisfaction of the court."); *Probate Estate*, Black's Law Dictionary (11th ed. 2019) ("A decedent's property subject to administration by a personal representative."); *see generally* ECF 1 (discussing Plaintiff's claims concerning estates). There is a longstanding exception to federal jurisdiction over probate matters because "a federal court has no jurisdiction to probate a will or administer an estate." *Markham v. Allen*, 326 U.S. 490, 494 (1946).

When Plaintiff alleges that Defendants cannot force Plaintiff to undergo compulsory medical treatment, vaccination, quarantine, or mask wearing, Plaintiff appears to rely on the Court first granting declaratory relief on his claim that he is a sovereign citizen. *See generally* ECF 1. Because the Court lacks jurisdiction to grant such declaratory relief, Plaintiff cannot rely on his sovereign citizenship. Even if Plaintiff had alleged an appropriate basis for jurisdiction for the claim, the claim would fail because Plaintiff pleaded no facts showing that he is in danger of being

11

forced to undergo medical treatment, vaccination, quarantine, or mask wearing. As a result, there is not a case or controversy because Plaintiff has not shown an injury, and therefore lacks standing to bring such a suit. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2007) ("The requisite elements of this 'core component derived directly from the Constitution' are familiar: 'A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'") (quoting *Allen v. Wright*, 468 U.S. 737, 738 (1984)).

II. <u>Diversity Jurisdiction</u>

As discussed above, the current statutory scheme for diversity jurisdiction requires that the parties have diverse citizenship and that the amount in controversy exceed 75,000 dollars. 28 U.S.C. § 1332(a); *Home Depot U.S.A., Inc.*, 139 S. Ct. at 1746. Diversity of citizenship must be complete, meaning that "*each* defendant is a citizen of a different State from *each* plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) (emphasis in original). When determining citizenship of the parties for purposes of diversity jurisdiction, the domicile of each party is used. *Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th Cir. 1973). Domicile involves two elements: physical presence in a State and intent to remain in the State. *See Napletana v. Hillsdale Coll.*, 385 F.2d 871, 872–73 (6th Cir. 1967).

While Plaintiff claims that he is not a citizen of the United States, he listed an address in Lake Orion, Michigan under his signature. ECF 1, PgID 3, 42. The address under Plaintiff's signature is sufficient evidence for the Court to believe that Plaintiff

12

has a physical presence in Michigan and an intent to remain in Michigan. *See Napletana*, 385 F.2d at 872–73. Plaintiff then listed one Defendant, the Attorney General of Michigan Dana Nessel, as having a Lansing, Michigan address. ECF 1, PgID 18. Accordingly, there is no complete diversity of citizenship. *See Owen Equip. & Erection Co.*, 437 U.S. at 373; *see also Erwin-El*, 2019 WL 2763314, at *1 (holding that a plaintiff alleging he was a sovereign citizen was actually a citizen of Michigan when the complaint stated that the plaintiff lived in Michigan).

III.    Sua Sponte Dismissal

Civil Rule 12(h)(3) requires that "[i]f [a] court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." As explained above, there is no subject matter jurisdiction for any of Plaintiff's claims. The Court will therefore sua sponte dismiss the complaint under Rule 12(h)(3) for lacking subject matter jurisdiction.

Even if the Court could liberally construe any of the claims in the complaint as arising under a federal law or constitutional provision, the Court would still dismiss the complaint for lack of subject matter jurisdiction because the claims are frivolous. *Apple*, 183 F.3d at 479; *see also Erwin-El*, 2019 WL 2763314, at *1; *Chase Manhattan Mortg. Corp. v. Blakely-El*, No. 06-10343, 2007 WL 1041256, at *1 (E.D. Mich. Apr. 5, 2007) (Feikens, J.); *King v. Corp. of U.S. of Am.*, No. 05 CV 72849, 2005 WL 3320866, at *4 (E.D. Mich. Dec. 7, 2005) (Cleland, J.).

IV.     Request to Seal

Finally, Plaintiff requested that the Court seal all pleadings. ECF 1, PgID 42. There is "a strong presumption in favor of openness as to court records." *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) (internal quotation and citation omitted). The party seeking to seal court records bears the burden of overcoming the presumption and can only do so by demonstrating compelling reasons for why the records should be sealed. *Id.* After painstakingly combing through Plaintiff's 142-page complaint, no reason exists, let alone a compelling one, to seal the pleadings. In fact, the overuse of legal jargon and antiquated terminology renders the pleadings largely unintelligible.

## CONCLUSION

Considering the analysis above, the Court will sua sponte dismiss the complaint under Rule 12(h)(3) for lack of subject matter jurisdiction and will deny Plaintiff's request to seal the pleadings. This is a final order that closes the case.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the complaint [1] is **DISMISSED**.

14

**IT IS FURTHER ORDERED** that the request to seal the pleadings is **DENIED.**

This is a final order that closes the case.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: September 21, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 21, 2021, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager
